GERI LYNN GREEN (SBN 127709)
Law Offices of Geri Lynn Green LC
155 Montgomery Street Suite 901
San Francisco CA 94104
Tel.   415.982.2600
Fax.  415. 358-4562
greenlaw700@gmail.com
gerilynngreen@gmail.com


Attorney for Defendant MANUEL FRANCO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES of AMERICA, | Case No. 08-0730-WHA |
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION TO EXCLUDE STATEMENTS OBTAINED THROUGH FRAUD AND COERCION; REQUEST FOR EVIDENTIARY HEARING** |
| IVAN CERNA, et al. (Manuel Franco ), | |
| Defendant. | **Date: February 14, 2011**<br>**Time: 2:00 p.m.**<br>**Dept:  Hon. William Alsup** |

TO THE ABOVE ENTITLED COURT AND TO THE UNITED STATES ATTORNEY OF THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that on the above date in the above courtroom of the above-entitled court, the defendant, MANUEL FRANCO, will move and does hereby move through counsel the Court for an order to exclude all statements of Manuel Franco obtained by law enforcement on August 26, 2008, September 18, and 26, 2008, and October 22, 2008 on the grounds that they were obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  Agents exerted improper influence, fraud, trickery and coercion to obtain these statements over the course of weeks.  Thereby, they were neither voluntary, freely given, or of rational intellect.  Defendant moves herein for an evidentiary hearing.

This motion is based on the following memorandum of points and authorities, the Constitution of the United States, all relevant statutory authority and case law, the record on file in

this matter, declarations in support, and such evidence and argument as the Court will entertain at the February 14th, 2011 hearing.

## STATEMENT OF RELEVANT FACTS

According to Government discovery, Manuel Franco worked from September 2005 through February 2010, when he was formally de-activated, as a paid embedded Human Source for the Federal Bureau of Investigation, in a joint investigation of the gang known as Mara Salvatrucha, or MS-13. The joint investigation was called "Operation Community Shield" and "Devils Horns", and included the FBI, Department of Homeland Security ICE, and SFPD's Gang Task Force Unit. While members from each agency met with and debriefed Mr. Franco in September of 2005, when he warned SFPD Officer Mario Molina of the gang's intention to kill him, Mr. Franco first worked as a police informant with only the SFPD Gang Task Force Unit. In that capacity, he infiltrated the 20th Street Clique of the Mara Salvatrucha and reported criminal activity to Molina resulting in the arrest of various members. From September 2005, until he was recruited by the FBI in February of 2006, he reported to Molina. When he was recruited as an informant by the FBI, he regularly supplied information to both his handlers at the FBI and Mario Molina at the SFPD about the inner workings of the MS-13. (*See* Testimony of Mario Molina, Exhibit A attached to Declaration of Geri Lynn Green In Support of Motion to Sever, Filed Under Seal)

Franco regularly reported to his FBI handlers for more than two years, debriefing SFPD, FBI and/or ICE agents. He met with his FBI handlers on more than 72 occasions, and spoke with Mario Molina on countless occasions. To each he provided valuable intelligence on the inner working of the gang and its members, identifying hundreds of gang members, wearing body wires to record meetings under extremely dangerous conditions on at least 14 different occasions, and making scores of consensually monitored calls to gang members in efforts to purchase weapons as well as to implicate gang members in the ongoing criminal activity. He provided extensive information critical to the investigation and prosecution, including MS-13 members' names and addresses, the identity of members who had guns, MS-13 activities, times and places of meetings, the interaction with members from Los Angeles and El Salvador, past criminal activity and planned

criminal activity, including murders, gun buys, hits on law enforcement, etc.  He suffered beatings, arrests and threats of murder from the gang while assisting in this investigation.

When he was recruited, he was just twenty years old and working his way through college. He had no criminal record, and expressed to Molina and his FBI handlers his intent on a career in law enforcement.  Molina and Flores, his main FBI handler, used his interest in law enforcement to entice him into becoming an embedded agent in the gang.  They promised that his work with the gang would further his career in law enforcement, they promised that the gang would never know of his work with law enforcement and in the event it became known, they promised protection for him and his family.  He was offered good pay and that he would have a hand in the downfall of the gang, a feather in his cap that would certainly prove invaluable in his future career.

Franco was directed and encouraged to go undercover into what the Government agents knew to be a murderous, violent and dangerous gang.  As he was a young inexperienced undercover agent, he was immediately suspected by the gang leadership of being an informant and green-lighted for murder.  (*See* FD-302s, Exhibit C attached to Declaration of Geri Lynn Green In Support of Motion to Sever, Filed Under Seal)  Despite the knowledge that this young man was in serious danger of being killed, the individual agents induced him to continue providing investigative services with the promise of protection for him and his family, and that he would be assisted in his pursuit of a future career in law enforcement.  For years they strung him along believing that if he just continued to supply law enforcement with information that he would someday become a cop.  All the while they were fully aware of the fact that if his cover was ever blown, he and his entire family would be killed by the gang.  It was common knowledge to his handlers as well as himself that he could not come and go in and from the Mara-Salvatrucha.  (See Affidavit to Search Warrant, Exhibit E attached to Declaration of Geri Lynn Green In Support of Motion to Sever, Filed Under Seal) Without a change of identity and witness protection by the government, the only way out of the gang was in a pine box.  He was always assured by the agents that he would be protected.

He was heavily monitored and supervised during his work with the SFPD and FBI.   Both agencies authorized him to appear to engage in the conspiracy in an effort to obtain intelligence. The FBI authorized him to engage in drug deals, gun deals, and conspiratorial activities.  Individual

members of the FBI, with the United States Attorney's Office for the Northern District of California, regularly renewed Mr. FRANCO's status as an activated Human Source authorized to engage in otherwise illegal activities in the pursuit of infiltrating the MS-13.  Over the next two years Mr. FRANCO was used by the aforementioned members of the FBI, ICE, and U.S. Attorneys' Office to infiltrate the gang and to provide valuable information.

His handlers were aware that MS-13 gang members are required to engage in acts of violence by the rules of admission to the gang.  They were also aware that any Human Source successfully infiltrating the gang as a member would necessarily be forced to engage in or at least be perceived as engaging in acts of violence against Norteños or suffer punishment and possibly death.   And they knew that the only way out of the gang for Mr. Franco was by death. They knew that any gang member found to have been providing information to law enforcement was punished by killing him and his family.  They also knew that his cover had been compromised and that he had to prove himself  to the gang in order to complete the mission. As early as Fall of 2005, the gang suspected that he was an informant and the leadership "green-lighted" him to be murdered.  The FBI well aware of the fact danger they had put him and his family in, would require that he take extreme measures to maintain their safety.

Despite this knowledge, the FBI continued to have him infiltrate the gang. His intelligence prevented countless acts of violence, shootings and quite possibly murders.  The information provided by Mr. FRANCO was directly responsible for the seizure of a number of guns from the streets of San Francisco.  He was responsible for the infiltration by informant SA-1218.  His information led to the arrest of at least one murder suspect and the seizure of the murder weapon. (*See*  Declaration of Manuel Franco, Filed Under Seal, Exhibit A – Page 1-4, August 16, 2007 FBI Authorization;   MF133, Exhibit B attached to Declaration of Geri Lynn Green In Support of Motion to Sever, Filed Under Seal)

In an FBI report dated June 26, 2007, Flores described Mr. FRANCO as "an established source with excellent access, who has reported reliably for over one year." Shortly thereafter,  she stopped by his work and gave him a new cell phone.  Over time, their relationship had devolved from the almost daily debriefings of the early months down to monthly contact.  (*See* 6/26/07 FBI

letter, Exhibit B attached to Declaration of Geri Lynn Green In Support of Motions to Dismiss, Filed Under Seal.)  She was transferred to IRAQ on or around October 2007 and did not have any further contact with Mr. Franco.   Despite his long history of reliable service, his new handler decided in this short time period to abandon Mr. FRANCO inside the dangerous, murderous gang without even informing him.  (*See* 02/05/2010 FBI letter, Exhibit B attached to Declaration of Geri Lynn Green In Support of Motion to Sever, Filed Under Seal.)

Mr. FRANCO was not contacted by law enforcement until July of 2008, when Inspectors Cagney and Noolan executed a search warrant at the home of Moris Flores.  Shortly thereafter, Mr. FRANCO went to SFPD at 850 Bryant Street and embarked on a multi-day debriefing  which occurred on August 26, and September 18 and 26, 2008.  The interrogators, obviously recognizing that Mr. Franco believed he was still acting in his capacity as an imbedded informer carefully nurtured that state of mind by techniques like encouraging the continuation of his activities in applying for law enforcement jobs and offering to help.

Even after his arrest on October 22, 2008, believing his arrest to be part of his cover, well knowing that he would be killed by the gang if the gang ever realized his involvement in bringing down the gang,  Mr. FRANCO continued to provide agents the information he had gathered.  He did so under the Government fostered mistaken belief that he was an imbedded agent and under the duress knowing that if the agents did not safely extract him from the gang, he and his family would be killed.

## ARGUMENT

### I.  VOLUNTARINESS OF MR. FRANCO'S STATEMENTS

"The Supreme Court has stated that when a court is determining whether a confession was given voluntarily it must consider the `totality of the circumstances.'" *Boulden v. Holman*, 394 U.S. 478, 480, 89 S.Ct. 1138, 1139-40, 22 L.Ed.2d 433 (1969); *Greenwald v. Wisconsin,* 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77 (1968).

The touchstone of the admissibility of statements against the defendant is whether the statement is "voluntry."  Pursuant to the Due Process Clause, a confession that is involuntary must be suppressed for all purposes. *Mincey v. Arizona,* 437 U.S. 385, 397-98 (1978); *see also Henry v. Kernan,*

197 F.3d 1021, 1029 (9th Cir. 1999) ("Post-*Miranda* confessions which are found to be involuntary may not be admitted for any purposes, including impeachment."). To be admissible, the government has the burden of proving a confession's voluntariness by a preponderance of the evidence. *See Lego v. Twomey,* 404 U.S. 477, 488-89 (1972). "The Supreme Court of the United States has always set high standards of proof for the waiver of constitutional rights . . . . The federal courts are to indulge every reasonable presumption against waiver of such fundamental rights." *Gladden v. Unsworth,* 396 F.2d 373, 376 (9th Cir. 1968).

The overarching test for the voluntariness of a confession is that it "must be the product of a rational intellect and a free will.'" *United States v. Tingle,* 658 F.2d 1332, 1335 (9th Cir. 1981) (quoting *Blackburn v. Alabama,* 361 U.S. 199, 208 (1960)). A confession may be involuntary despite proper *Miranda* warnings. *See Oregon v. Elstad,* 470 U.S. 298, 318 (1985); 18 U.S.C. 3501(b); *cf. Colorado v. Connelly,* 479 U.S. 157, 160 (1986).

Two years after the *Miranda* decision, the Supreme Court made it clear that a statement must be the product of rational intellect and a free will to be admissible. *Townsend v. Sain,* 372 U.S. 293, 308 (1963) (internal citations and footnotes omitted).

Here, the government seeks to introduce multiple statements made by a reliable, confidential informant, that were induced with the promise of effective extraction from the gang and a future career in law enforcement and coerced under threat of certain death by gang members if his status as an agent were divulged. The statements were made on August 26, 2008, September 18, 2008, September 26, 2008, and October 22, 2008.

**A. Statements Induced Through Trickery and Deceit Must Be Excluded.**

"[A]confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence... A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted." *Bram v. United States*, 168 US 532, 542-3 (Sup Ct 1897) The Supreme Court has consistently maintained this test. *See*

*Brady v. United States* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) and *Hutto v. Ross,* 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976).

On August 26, 2008, following the execution of the SFPD search warrant, Mr. Franco went to the police station at 850 Bryant to provide information to the homicide inspectors Cagney and Noolan. The agents preyed upon his vulnerability and misconceptions, and made inducing and deceptive statements to him such as:

> FRANCO:  *I just turned in my CHP application too.*
> CAGNEY: *I saw that. Oakland, right? Was that Oakland?*
> FRANCO: *Yeah, Oakland. (Inaudible)*
> CAGNEY: *You want to be a cop?*
> FRANCO: *Highway Patrol, yeah.*
> CAGNEY: *You know CHP is tough man. You've got six months and you have to live up there in Sacramento. They work you hard man. You ready for that? It's like being in the army. Well we appreciate you coming down here. If you can help us, we can probably help you out. So maybe we can work something out. You know what? To tell you the truth, maybe if there's something we can do for you about your job, you know trying to get a job, maybe we can hook you up too.*

Cagney made it seem as though Franco's belongings were seized under the search warrant only to protect his Identity as an informant from the other gang members. ("*We know you want some of your stuff back. I looked through and I have no problem releasing some things back to you.* ")

On September 18, 2006, Mr. Franco was asked by SFPD Homicide Cagney and Noolan to meet ICE agents Ginn and Horton at Boulevard Café in Daly City. During that meeting, Mr. Franco stated that he was seeking a job with the San Francisco Sheriff's Department and has an upcoming test. Inspector Cagney expressed appreciation for Franco's assistance and stated that he knew someone at the Sheriff's Department that he would call on Mr. Franco's behalf. Franco believed, and was induced to believe that he was a member of the law enforcement team, and that he would receive assistance extracting himself from the gang and becoming law enforcement.

> CAGNEY: *Lunch is on me…You are not in jail and not under arrest. Appreciate when you came down and talked to us, it was a big help. How's the job search?*
> FRANCO: *[Inaudible]…San Francisco Sheriff.*
> CAGNEY: *Do you want us to make a call for you? Maybe we can do something for you? So are we gonna bump into you all the time now? Maybe you can help us get into the jail faster.*
> FRANCO: *[Inaudible] test with the SFSD on Saturday.*
> CAGNEY: *I know someone over at the Sheriff's Department. I'll give him a call and have him watch out for you. I'll see what I can do for you alright?*

> GINN:        *We work for ICE. I appreciate you coming in. not under arrest, can leave anytime. I can't help you with a job or anything.*

The agents nurtured the Franco's state of mind using techniques like encouraging him to apply for law enforcement jobs.  Franco had no reason to doubt them.  After almost three years of living as an imbedded agent reporting to SFPD and some 20 different FBI agents, this young man was living under the belief that he had the responsibility to provide information to any law enforcement agent or agency that asked him.  The agents did nothing to disabuse him of that misconception, and instead just continued to foster it defrauding him every step of the way.

## B.  Statements That Were the Product of Duress Must Be Excluded

In deciding whether a confession was voluntary, courts are to examine "the totality of the circumstances" to determine whether the confession was "made freely, voluntarily and without compulsion or inducement of any kind." *Withrow v. Williams,* 507 U.S. 680, 689 (1993) (citations and internal quotation marks omitted); *see also United States v. Harrison,* 34 F.3d 886, 890 (9th Cir. 1994) ("We consider the totality of the circumstances and determine whether the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." (citations and internal quotation marks omitted).

Mr. Franco became an informant to join in and advance the law enforcement goals of investigation and prosecution of the MS-13 gang.  After these goals were attained, he was reliant on his government handlers to safely extract him from the gang, and to protect he and his family.  After three years of working with the SFPD and FBI, bringing down several gang members, engaging scores of debriefings, wearing body wires, and making consensual calls, Franco was confused by the ICE agents new technique of handling him by threats to his safety.  He did not, nor could he understand.  All he knew was if he did not cooperate with them, he and his family would be killed.  And the agents echoed that sentiment.

On September 26, 2008, ICE agents told him:

> *If you are completely honest with us that can be taken into consideration.  You cannot pick and choose the information you divulge to us.  You have to be 100%.  You coming forward in a limited capacity isn't enough.  The reasons we wanted to get a second opportunity to say to you, Give it to us - Tell us what the real deal is – its got to be an all or nothing.  Don't be limited in answering questions.  You do have an opportunity for a future.  We can be concerned for you for several reasons…we are concerned that you might find yourself in jail, and we are concerned for your safety in*

*the future as well because in your limited attempts to work with law enforcement, that puts you in danger as well with the guys out on the street you're in contact with.*

Confused and scared for his life and the life of his wife, a young woman well known by the gang as she is the sister of Moris Flores, his five-day-old baby and his extended family, he did whatever he thought the agents wanted in order to attempt to protect his loved ones.  The agents took no steps whatsoever to disabuse him of this belief.  In fact, they fostered his fears to coerce statements from him.

### C.  The October 22, 2008 Statements Were Not Voluntary Despite Miranda Warnings

A statement can even be found involuntary despite being made after proper *Miranda* warnings. See *id.*; *Tingle*, 658 F.2d at 1337.  To determine whether a confession has been coerced, the court should examine the totality of the circumstances, including the defendant's characteristics, the conditions of the interrogation, and the conduct of the police.  See *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1963).  A defendant's subjective psychological characteristics are relevant to the voluntariness inquiry when there is evidence of psychological coercion, because such personal sensitivities may "render[] him more susceptible to subtle forms of coercion." *Commonwealth of Northern Mariana Islands v. Mendiola,* 976 F.2d 475, 485 (9th Cir. 1992).

In *Tingle*, the Ninth Circuit held that a confession obtained after proper *Miranda* warnings and a written waiver was involuntary because of psychological coercion.  658 F.2d at 1333, 1337.  Two agents interrogated *Tingle* in their car; she sat in the back seat while they sat in the front.  Id. at 1333. The agents had *Tingle* read her rights from a form; she indicated that she understood her rights and signed the written waiver.  Id.  During the interrogation, the agents accused *Tingle* of lying and listed a litany of lengthy sentences that she might receive.  Id. at 1333-34.  The agents then told *Tingle* that she would not, or might not, see her child for awhile if she went to prison.  *Id.* at 1334.  The Court held that it was clear that both the purpose of these statements and the reasonable conclusion to be drawn from them was that *Tingle* would not see her child for a long time if she did not cooperate. See *id.*  "Viewed in that light, [the agent's] statements were patently coercive." *Id.*  Therefore, the confession was involuntary.  See *id.* at 1337.

The totality of circumstances analysis of *Tingle* is illustrative in the present case.  Mr. Franco's activities as an informant were performed reliably and regularly.  Both he and the government are

aware that without government protection he and his family would face imminent harm and death. After his arrest, he believed that he would be protected in exchange for his ongoing cooperation. He did not have the option of silence, as he would have lost his government protection, and he knew that meant that he and his family would have been left in the gang to be killed, either in prison or on the streets.

The government agents held incredible coercive power over Mr. Franco when they treated him as a colleague and induced him with a career in law enforcement.  More disturbingly, is the duress they created when they indicated that he had not provided enough information, and either he provide more information or he would be abandoned in the gang either in prison or on the streets. At this point, his life and the lives of his family were threatened, and his will was not his own. Statements under this sort of duress cannot be voluntary, thus must be suppressed.

II.   **THE COURT SHOULD HOLD AN EVIDENTIARY HEARING TO DETERMINE WHETHER MR. FRANCO VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY WAIVED HIS *MIRANDA* RIGHTS, AND WHETHER HIS CONFESSION WAS VOLUNTARY**

If the government does submit declarations and places facts in dispute, this Court must conduct an evidentiary hearing. See, e.g., *United States v. DeCesare*, 765 F.2d 890, 895-96 (9th Cir.), as amended 777 F.2d 543 (9th Cir. 1985) ("The sworn statements and exhibits present directly contradictory accounts of the sequence of events, and thus whether the officers complied with the statute. We conclude that Flannery made an offer of proof sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.*" United States v. Ledesma*, 499 F.2d 36, 39 (9th Cir.), cert. denied, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974). Thus, an evidentiary hearing was required.")

Under 18 U.S.C. Section 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Mr. FRANCO are voluntary. In addition, Section 3501(b) requires this Court to consider various enumerated factors, including whether Mr. FRANCO understood the nature of the charges against him and whether he understood his rights. Fed. R. Crim. P. 12 requires that these factual determinations be supported by factual findings. See *United States v. Prieto-Villa*, 910 F.2d 601, 606-10 (9th Cir. 1990) (A"[s]uppression hearings are often as

important as the trial itself." *Waller v. Georgia*, 467 U.S. 39, 46 . . . (1984) . . ."The government's case may turn upon the confession or other evidence that the defendant seeks to suppress, and the trial court's ruling on such evidence may determine the outcome of the case." . . ."[I]n many cases, the suppression hearing [is] the only trial, because the defendants thereafter plead[ ] guilty pursuant to a plea bargain." *Waller*, 467 U.S. at 47, 104 S. Ct. at 2216 (emphasis in original) . . . . The requirement that essential factual findings be placed on the record to facilitate appellate review originated at the Supreme Court and is underscored by the Court's statement in Murray that fact finding is the province of the district court.") (internal citations and quotations omitted).

This Court must accordingly review the facts on the record in support and opposition of Mr. FRANCO's motion to suppress statements, and make factual findings in response to the defendant's motion.

Should the Court determine after considering the government's response that testimony is in conflict or that credibility is at issue, Mr. FRANCO would request an evidentiary hearing to determine whether the totality of the circumstances supports a finding that he did not validly waive his constitutional rights.

### Conclusion

For the foregoing reasons, Mr. Franco respectfully requests that the Court suppress his statements from August 26, 2008, September 18, 2008, September 22, 2008, and October 22, 2008. These statements were not made voluntarily, as they were made under duress and trickery.  Further, the involuntary statements made under duress are not cured by *Miranda* warnings given on October 22, 2008.  On the above detailed 4 dates, the involuntary statements were extracted in violation of Mr. Franco's Fifth Amendment rights and must be suppressed.

DATED: January 26, 2011                    Respectfully Submitted,

LAW OFFICES OF GERI LYNN GREEN LC

S/_____
By: GERI LYNN GREEN
Attorney for Defendant MANUEL FRANCO

**<u>Cases</u>**

*Blackburn v. Alabama,* 361 U.S. 199, 208 (1960))............................................................. 6

*Boulden v. Holman,* 394 U.S. 478, 480, 89 S.Ct. 1138, 1139-40, 22 L.Ed.2d 433
    (1969);....................................................................................................................... 5

*Brady v. United States* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)............................ 7

*Bram v. United States,* 168 US 532, 542-3 (Sup Ct 1897) .......................................... 6

*Colorado v. Connelly,* 479 U.S. 157, 160 (1986). ....................................................... 6

*Commonwealth of Northern Mariana Islands v. Mendiola,* 976 F.2d 475, 485 (9th Cir.
    1992) ......................................................................................................................... 9

*Gladden v. Unsworth,* 396 F.2d 373, 376 (9th Cir. 1968). ........................................... 6

*Greenwald v. Wisconsin,* 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77
    (1968). ....................................................................................................................... 5

*Henry v. Kernan,* 197 F.3d 1021, 1029 (9th Cir. 1999)................................................. 6

*Hutto v. Ross,* 429 U.S. 28, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976) ............................................ 7

*Lego v. Twomey,* 404 U.S. 477, 488-89 (1972)............................................................ 6

*Mincey v. Arizona,* 437 U.S. 385, 397-98 (1978)......................................................... 5

*Oregon v. Elstad,* 470 U.S. 298, 318 (1985) ............................................................... 6

*Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1963)............................................... 9

*Townsend v. Sain,* 372 U.S. 293, 308 (1963................................................................ 6

*United States v. DeCesare,* 765 F.2d 890, 895-96 (9th Cir.) ....................................... 10

*United States v. Harrison,* 34 F.3d 886, 890 (9th Cir. 1994) ....................................... 8

*United States v. Ledesma,* 499 F.2d 36, 39 (9th Cir.) ................................................. 10

*United States v. Prieto-Villa,* 910 F.2d 601, 606-10 (9th Cir. 1990) ........................... 10

*United States v. Tingle,* 658 F.2d 1332, 1335 (9th Cir. 1981) ..................................... 6

*Waller v. Georgia,* 467 U.S. 39, 46 . . . (1984) ........................................................ 11

*Withrow v. Williams,* 507 U.S. 680, 689 (1993)........................................................ 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GERI LYNN GREEN (SBN 127709)
Law Offices of Geri Lynn Green LC
155 Montgomery Street Suite 901
San Francisco CA 94104
Tel.  415.982.2600
Fax.  415. 358-4562
greenlaw700@gmail.com
gerilynngreen@gmail.com


Attorney for Defendant MANUEL FRANCO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| UNITED STATES of AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>IVAN CERNA, et al. (Manuel Franco ),<br><br>       Defendant. | Case No. 08-0730-WHA<br><br>**DECLARATION OF GERI LYNN GREEN IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS AND REQUEST FOR EVIDENTIARY HEARING**<br><br>**Date: February 14, 2011**<br>**Time: 2:00 p.m.**<br>**Dept:  Hon. William Alsup** |

I Geri Lynn Green, am licensed to practice law in the State of California and the Northern

District of California.

I am appointed to represent Mr. Franco in the above captioned matter.

I declare under penalty of perjury the following:

1)  I reviewed the government discovery audio containing the interviews and statements of

Manuel Franco labeled August 26, 2008, September 18, 2008, September 26, 2008 and October 22,

2008.

2)  I am informed and believe that the quotations and descriptions of the statements in the

above referenced motion are true and correct transcriptions of portions of that audio.

As to those facts set forth above I declare under penalty of perjury that they are true, except those I declare on information and belief, as to those I believe them to be true.

Executed on January 26, 2011 in San Francisco California.


S/_____
                    By Geri Lynn Green
                    Attorney for MANUEL FRANCO