GERI LYNN GREEN (SBN 127709)
Law Offices of Geri Lynn Green LC
155 Montgomery Street Suite 901
San Francisco CA 94104
Tel: (415) 982-2600
Fax: (415) 358-4562
greenlaw700@gmail.com
gerilynngreen@gmail.com


Attorney for Defendant
MANUEL FRANCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES of AMERICA, | Case No. 08-0730-WHA |
|---|---|
| Plaintiff, | **DEFENDANT MANUEL FRANCO'S FACTUAL SUPPORT FOR REQUESTED ENTRAPMENT AND DURESS INSTRUCTIONS** |
| v. | |
| IVAN CERNA, et al. (Manuel Franco ), | |
| Defendant. | |
| | Judge: Hon. William H. Alsup |

    Defendant MANUEL FRANCO files this pleading in addition to that which has previously lodged under seal with this court. This pleading hereby incorporates by reference the under seal filing entitled DEFENDANT MANUEL FRANCO'S FACTUAL SUPPORT FOR REQUESTED ENTRAPMENT AND DURESS INSTRUCTIONS, which contains additional factual support for his requests to have the jury instructed on the defenses of entrapment and duress.

    The uncontroverted evidence will show that Mr. FRANCO worked for the San Francisco Police Department (SFPD) and/or the Federal Bureau of Investigation (FBI) as a paid confidential informant embedded in the 20th Street Clique of the Mara Salvatrucha gang from September 24, 2005, and that his status of an embedded informant was not terminated until *January of 2011*. The evidence will also show that FRANCO continued working in that capacity as a reliable and trusted confidential informant for all periods relevant to these proceedings. The evidence will further show that notwithstanding the fact that he continued to work in plain sight known to the agencies at all times, neither agency ever informed him

that his status had changed. Therefore, the evidence will show that FRANCO reasonably relied on the promises and inducements made by the both agencies including that he embedded in this violent and deadly gang at the behest of the agencies with the public authority guaranteed him.

The evidence will overwhelmingly show that any acts the Government may prove FRANCO committed during this period were done in the furtherance of the his status as an embedded informant and with the specific or implied authority of the agencies for which he worked.

The evidence will show that each agency, the SFPD, FBI, and Department of Justice, anticipate and expect that embedded informants will be forced into situations where they must commit otherwise unlawful acts in order to maintain their cover and do their job and that those actions are authorized. Also both agencies are aware that failure to immunize such conduct when embedding an informant, risks that the informant will be entrapped by the government agent's inducements or worse, death or serious bodily injury.

Mr. FRANCO worked as an a trusted and reliable informant embedded undercover disguised as a MS-13 gang member and co-conspirator for years. He met with his handlers from both agencies often on a daily basis informing them of his activities as well as the activities of the gang. He did so, believing that he had the authority to perform these acts. The Government throughout rewarded him for his work and performance of the very activities he now stands charged. If any otherwise unlawful activity is, in fact, proven at trial, it is incumbent on the Government to prove that FRANCO was not entrapped by the Government's promises that he was authorized to perform these acts.

FBI Special Agents Sandra Flores, Elizabeth Wickman, and Kenneth Karch, FBI Special Agent in Charge Stephanie Douglas and Supervisory Special Agent Bryan S. Smith, Assistant United States Attorneys Jim Chou and United States Attorney Kevin Ryan, SFPD Officer Mario Molina, Inspector Scott Lau, and Captain Kevin Cashman, and others promised FRANCO protection from prosecution for those otherwise illegal acts he was required to commit in maintaining his disguise as a co-conspirator and thereby induced him to embedded him in the gang and take part in conspiratorial acts. They paid him to embed and to engage in this criminal activity fully aware of his activities and the pressures on him as an embedded informant to commit crimes. They further enticed FRANCO promising him that undercover work would lead to a career in law enforcement.

"Entrapment" is defined by Merriam Webster as "the action of luring an individual into

committing a crime in order to prosecute the person for it." Prosecuting Mr. FRANCO for any conspiratory acts he may have been lured into committing by these government agents by their promised immunity, monetary remuneration, and a career in law enforcement was nothing short of entrapment.

The uncontroverted evidence will prove that each and every overt or conspiratorial act, as well as, any and all acts of firearm possession the government may prove occurred were performed with the promised specific or implied public authority conferred upon Mr. FRANCO by either the Federal Bureau of Investigation, United States Attorney's Office and the Department of Justice, and/or the San Francisco Police Department. The evidence will also show that Mr. Franco reasonably relied on that authority and worked as a trusted and reliable informant from the moment he went to work for the government until his status of an informant was terminated in January of 2011.

**The Indictment**

Mr. FRANCO is charged in the Third Superseding Indictment with being a member of a Racketeering Conspiracy (18 U.S.C. § 1962(d); Conspiracy to Commit Murder in Aid of Racketeering (18 U.S.C. § 1959(a)(5)); Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering (18 U.S.C. § 1959(a)(6));  and  Count Four: Use/Possession of Firearm in Furtherance of Crime of Violence (18 U.S.C. §§ 924(c) & 2)

The Third Superseding Indictment further alleges that in furtherance of the conspiracy and to achieve the objectives thereof, MANUEL FRANCO performed at least one of the following overt acts. The overt acts allegedly perpetrated by Mr. FRANCO in summary are:

- On September 24, 2005, Mr. FRANCO is alleged to have met with, gang members at Mission Playground and discussed, the leadership of the 20th Street Clique, attacking rival gang members, taking control over drug distribution occurring in territory claimed by MS-13, and the killing of a rival gang member. (Overt Act 21.)
- That same day, FRANCO is alleged to have agreed to conduct surveillance on a rival gang member. (Overt Act 22)
- On October 21,2005, FRANCO, and others, gathered in the vicinity of 20th Street and San Carlos Street. (Overt Act 23)

- On April 8, 2006, FRANCO along with other gang members, fought with a group of individuals.  (Overt Act 36)
- On July 18, 2006, FRANCO discussed with gang members the need to attack rival gang members. (Overt Act 45)

The evidence at trial will show that each and every one of these overt acts, if proven, were committed with the public authority conferred by the SFPD and/or FBI.  This assertion is supported with the following evidence:

- FBI Special Agent in Charge Stephanie Douglas and Supervisory Special Agent Bryan S. Smith, Assistant United States Attorneys Jim Chou and Christine Wong, and SFPD Off. Molina, Insp. Lau Captain Cashman will testify that Mr. FRANCO's FBI authorizations *specifically* included his attendance and activities at the September 24, 2005 meeting alleged in Overt Acts (21) and (22.)
- SFPD Captain Cashman, Inspector Lau, and Officer Molina will all testify that Mr. FRANCO's authorization by SFPD to embed as an informant in the clique executed on October 6, 2005 *specifically* authorized him to gather with other gang members on October 21, 2005 as alleged in Overt Act (23).
- FBI Special Agents Flores, Kenneth Karch, Elizabeth Wickman, and Amy Poling will testify that Mr. FRANCO was *specifically* authorized by the them and the FBI to attend the gang meeting on April 8, 2006. (Overt Act (36).)   They will further testify that Mr. FRANCO was wearing a body wire that they placed on him in order to record the meeting.  And the recording will show that while performing his functions for the FBI, he was attacked, shot at and beaten with brass knuckles.
- FBI Special Agent in Charge Stephanie Douglas and Supervisory Special Agent Bryan S. Smith, Assistant United States Attorneys Jim Chou and Christine Wong, and SFPD Off. Molina, Insp. Lau Captain Cashman will testify that Mr. FRANCO was *specifically* authorized to meet with gang members in July of 2006 including any and all meetings that may have occurred on or about July 18, 2006.  (Overt Act 45).

   The Government has alleged *no overt acts* against Mr. FRANCO for which he was not authorized by the federal or local authorities.

**I. MR. FRANCO IS ENTITLED TO PRESENT AN ENTRAPMENT DEFENSE AND THE JURY SHOULD BE SO INSTRUCTED.**

The Government has indicated that it intends to put forth evidence that Mr. FRANCO engaged in various different acts in addition to those set forth in the indictment.   The government has set forth its various theories in earlier hearings before this court, pleadings, and in the evidence it presented in the two trials of severed co-defendants.  The evidence will show that either none of these incidents occurred, that if they did occur the evidence has proven that Mr. FRANCO was not involved, and as to any involvement of Mr. FRANCO that may be proven, his involvement was  either authorized, or upon his reasonable belief that he was authorized and therefore entrapped by his FBI and SFPD handlers.

Embedded informants are presumed to be operating in disguise. Their disguise includes maintaining the illusion to those they are spying on that they, too, are criminals.  The Department of Justice, Attorney General, FBI and SFPD all recognize the need for their embedded informants to engage in criminal acts short of violence in order to maintain cover and stay alive while embedding into violent criminal enterprises.  Indeed, the evidence will show that both the FBI and SFPD allow their embedded informants, including Mr. FRANCO, to engage in criminal acts short of violence.  Evidence will be produced that Mr. FRANCO was authorized to engage in criminal acts short of violence, and even acts of violence if necessary to protect himself or others.

What the evidence will show is that under overt threats by ICE agents, FBI agents, and SFPD officers that FRANCO, and his family, would be left without government protection and his status as a government informant revealed to the gang if he did not admit that he personally engaged in acts of violence, he admitted violent acts that subsequent investigation has proven *never* happened.

If any of these acts are proven to be true, they were all authorized acts.  In the event that the government is able to prove beyond a reasonable doubt that these acts were not publically authorized, FRANCO reasonably relied on the public authorization from his SFPD and FBI handlers and was therefore entrapped.

It is well established that  a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.‖ *Mathews v. United States*, 485 U.S. 58, 63 (1988). ―Only slight evidence will create the factual issue necessary to get the defense to the jury, even though the evidence is weak, insufficient, inconsistent, or of doubtful credibility.‖ *United States v. Becerra*, 992 F.2d 960, 963 (9th Cir. 1993) (internal quotation marks

omitted).

The entrapment defense has two elements: "(1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime." *United States v. Barry*, 814 F.2d 1400, 1401 (9th Cir. 1987). A defendant is not entitled to have the issue of entrapment submitted to the jury in the absence of evidence showing some inducement by a government agent and a lack of predisposition by the defendant." United States v. Rhodes, 713 F.2d 463, 467 (9th Cir. 1983); see also *United States v. Busby*, 780 F.2d 804, 806 (9th Cir. 1986) ("The trial court will instruct on entrapment only if the defendant presents some evidence of both elements of the entrapment defense.").[1]

Defendant MANUEL FRANCO makes the following proffers in order to support his requests for Entrapment and Duress Instructions.

**A. Evidence will Show Mr. FRANCO Had No Predisposition to Engage in Acts of Violence.**

- Mr. FRANCO will prove he had no predisposition for violence. Through school, employment, criminal history, and other social history documentary, testimonial and expert evidence, as well as testimonial and documentary evidence from his FBI and SFPD handlers, Mr. FRANCO will meet his burden and prove that he was not predisposed to commit any of the charged offenses. At the time of his first contact with government agents in Fall of 2005, he had *no criminal record*. He had no record of violence in school, or anywhere else. He was a United States citizen who was a working student, trying to put himself through school. In fact, Mr. FRANCO was interested in and pursuing a career in law enforcement when he was recruited by the SFPD enforcement to embed in the gang and become a confidential informant.

**B. SFPD and FBI Agents Induced FRANCO To Embed In The Clique With Specific and Implied Promises Of Authorization For Criminal Conduct, Money And A Career In Law Enforcement.**

---

[1] It should be noted that a defendant is not required to admit that he committed the crime in order to be entitled to an entrapment instruction. "[A] defendant in a criminal proceeding may assert inconsistent defenses." *United States v. Demma*, 523 F.2d 981, 985-86 (9th Cir. 1975). This means that a criminal defendant may assert innocence and, in the alternative, entrapment. Id. Additionally, the evidence supporting the entrapment defense need not be presented by the defendant. Even when a defendant presents no evidence of entrapment, it "may nonetheless become an issue at his trial if (1) the Government's case-in-chief suggests that the defendant who was not predisposed was induced to commit the crime charged, or (2) a defense or a government witness gives evidence suggesting entrapment." Id. at 984. *United States v. Spentz*, ___ F.3d ___ (9th Cir. July 28, 2011).

- Captain Cashman, Officer Molina and Inspector Lau will likely testify consistent with documentary evidence that they persuaded Mr. FRANCO to embed in the Clique and engage in conspiratorial acts with promises that he would not be prosecuted for conspiring with the gang members if he did so while working for the SFPD, he was also promised that he would be paid for his work, and that embedding in the Clique was a means to secure a career in law enforcement.  As a result, Mr. FRANCO entered into a *Cooperating Individual Agreement*  on September 30, 2005 with the SFPD to embed in the 20th Street Clique in order to obtain and provide information regarding criminals illegally in possession of firearms, criminals involved in shootings and other crimes of violence, criminals involved in narcotics trafficking, and criminals wanted on felony warrants.
- Testimonial and documentary evidence will show that on October 6, 2005, SFPD Captain Kevin Cashman authorized Lau and Molina to "utilize the CI [Mr. FRANCO] as an informant."   Mr. FRANCO's role therefore changed on  October 6, 2005 from simply providing historical information and intelligence to now embedding  in the organization to develop more intelligence, and facilitate arrests of gang members.
- SFPD internal memoranda will prove that the SFPD did not terminate Mr. FRANCO as an informant until *January of 2011*.

## II.  MR. FRANCO IS ENTITLED TO PRESENT A DEFENSE OF DURESS AND HAVE THE JURY SO INSTRUCTED

The evidence will show that by entrapping FRANCO into embedding in the gang, the Government agents put Mr. FRANCO in a position where he was forced to choose between two evils: gang life or death.  The evidence will further show that when they failed to respond to his calls in late 2007 or provide him with an exit plan, they did so knowing the danger they had put him in and the choices he would be forced to make to protect his safety and the safety of his family.

The evidence will show that during the time he was embedded in the gang disguised as a co-conspirator, Mr. FRANCO, and his family, were at all times in immediate and impending danger of being killed if FRANCO were to be suspected or found out to be working for the government as an informant.  Each and every government agent will testify consistent with their testimony and the

government proof at the recent trial of the co-defendants that Mr. FRANCO'S fear of harm was reasonable and that acts of violence in the gang were unpredictable thereby providing Mr. FRANCO no reasonable opportunity to escape.

A defendant is entitled to present a duress defense to the jury once the defendant has made a prima facie showing of duress in a pre-trial offer of proof. *United States v. Spentz*, 527 F.3d 798, 802 (9th Cir. 2008)

There are three elements of the duress defense: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm. *United States v. Shapiro*, 669 F.2d 593, 596 (9th Cir. 1982). Sometimes a fourth element is required: the defendant must submit to proper authorities after attaining a position of safety. *United States v. Peltier*, 693 F.2d 96 (9th Cir. 1982) (per curiam)

### A. The Threat Of Death Was Immediate And Imminent

- Evidence will be presented through his FBI and SFPD handlers and others that FRANCO was in extreme danger the entire time he was embedded in the gang.
- Evidence will be adduced from the FBI and SFPD handlers that the danger to Mr. FRANCO during the entire time he was embedded in the gang was immediate and imminent.
- These witnesses will further testify that Mr. FRANCO, under threat of death, was required to prove his allegiance to the gang through engaging in criminal acts.
- The evidence will show that this was a violent gang who would kill anyone it perceived as a threat, or an informant.

### B. FRANCO Harbored A Well Grounded Fear That The Threat Would Be Carried Out

- Testimony by Jaime Martinez, Espinoza, Abraham Martinez, Roberta Acosta, and other government witnesses will show that gang rules prohibited members from leaving the gang alive, and that a person found to be a government informant was subject to death—for himself and his family. Moreover, the LA Rules adopted by the 20th Street Clique in September 2005 required all members to follow the rules or face punishment, including death. Mr. FRANCO attended and recorded gang meetings and was well aware of the danger he and his family

faced if he were found out. Indeed, his awareness was heightened as he had, been shot at and beaten with brass knuckles while serving for the FBI.

### C. There Was No Reasonable Opportunity To Escape

- The evidence will show that neither the SFPD nor the FBI ever provided Mr. FRANCO with an exit strategy so that he could extricate himself from the gang in the event he needed or wanted to.

- It is also anticipated that the evidence will show that FRANCO was particularly vulnerable to duress and coercion as a result of his developmental challenges, and mental condition, as well as Stockholm Syndrome he developed after being abandoned in the gang, leaving him particularly susceptible to the sort of duress at play here. It is anticipated that the government agents were aware of the risks of subjecting him, a young, vulnerable, untrained source, to the pressures of being abandoned in a violent criminal gang without an exit strategy or means to communicate with his handler when he needed help.

DATED: September 6, 2011

LAW OFFICES OF GERI LYNN GREEN, LC

By:_____
    GERI LYNN GREEN
    Attorney for Defendant
    MANUEL FRANCO