GERI LYNN GREEN (SBN 127709)
Law Offices of Geri Lynn Green, LC
155 Montgomery Street, Suite 901
San Francisco, CA 94104
Tel: (415) 982-2600
Fax: (415) 358-4562
greenlaw700@gmail.com

Attorney for Defendant
MANUEL FRANCO

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | **MOTION _IN LIMINE_ # 18** |
| v. | |
| MANUEL FRANCO, | **DEFENDANT MANUEL FRANCO'S MOTION TO PERMIT USE OF LEADING QUESTIONS ON DIRECT EXAMINATION OF INVESTIGATING LAW ENFORCEMENT AGENTS, GOVERNMENT INFORMANTS, AND COOPERATING WITNESSES** |
| Defendant. | |
| | Date:  December 14, 2011 |
| | Time:  1:30 p.m. |
| | Dept:  Hon. William Alsup |

## I.  INTRODUCTION

Defendant Manuel Franco hereby moves for an Order permitting him to use leading questions in his direct examination of law enforcement agents who participated in the investigations of the 20th Street Clique, under Federal Rule of Evidence ("FRE") 611(c), on the ground that federal law enforcement agents are both adverse parties and witnesses identified with adverse parties, and that San Francisco Police Department ("SFPD") Gang Task Force officers are witnesses identified with adverse parties.

Mr. Franco also moves for an Order permitting him to use leading questions in his direct examination of government informants and other cooperating witnesses, under FRE 611(c), on the ground that they are witnesses identified with adverse parties.

## II.  ARGUMENT

Federal Rule of Evidence 611(c) states:

> Leading questions should not be used on the direct examination of a
> witness except as may be necessary to develop the witness' testimony.

> Ordinarily leading questions should be permitted on cross-examination.
> *When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.*

Fed. R. Evid. 611(c) (emphasis added).  The final sentence of FRE 611(c) plainly establishes that the Court has discretionary authority to permit leading questions on direct examination when a party calls as a witness an "adverse party" or "a witness identified with an adverse party."

As explained by the accompanying Advisory Committee Notes, the purpose of the final sentence of Rule 611(c) is to enlarge the category of witnesses automatically treated as hostile witnesses:

> The final sentence [of FRE 611(c)] deals with categories of witnesses automatically regarded and treated as hostile.  Rule 43(b) of the Federal Rules of Civil Procedure has included only "an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership of association which is an adverse party."  This limitation virtually to persons whose statements would stand as admissions is believed to be an unduly narrow concept of those who may safely be regarded as hostile without further demonstration.  The phrase of the rule, "witness identified with," an adverse party, is designed to enlarge the category of persons thus callable.

Fed. R. Evid. 611(c), advisory comm. nn. (citations omitted); see also Haney v. Mizell Memorial Hospital, 744 F.2d 1467, 1477-78 (11th Cir. 1984) ("Rule 611(c), however, significantly enlarged the class of witness presumed hostile, and therefore subject to interrogation by leading questions with further showing of actual hostility.").

Moreover, in amending FRE 611(c) so that it would be applicable in both the civil and criminal context, the Judiciary Committee of the House of Representatives specifically noted its intent to permit criminal defendants to use leading questions on direct examination of witnesses identified with the Government.  The Committee explained that this amendment was made "to reflect the possibility that in criminal cases a defendant may be entitled to call witnesses identified with the government, in which event the Committee believed the defendant should be permitted to inquire with leading questions."  H.R. Rep. No. 650, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 7051, 7075, 7086.  Thus, the Committee understood FRE 611(c) to automatically treat witnesses identified with the government as hostile to a criminal defendant.

\\\

\\\

### A.   Use of Leading Questions on Direct Examination of Investigating Law Enforcement Agents

Mr. Franco submits that federal law enforcement agents who participated in the investigation of the 20th Street Clique are both "adverse parties" and "witnesses identified with adverse parties," and that SFPD Gang Task Force officers are "witnesses identified with adverse parties," and thus requests permission to use leading questions on direct examination of these witnesses.

The few cases addressing this issue in the criminal context support this proposition.  In the only Ninth Circuit case on point, the Court found "merit" in the defendant's argument that he should have been permitted to utilize leading questions when calling a government investigator as an adverse witness. United States v. Tsui, 646 F.2d 365, 368 (9th Cir. 1981) (holding that any error was not prejudicial because the anticipated testimony was irrelevant).  In Tsui, the Ninth Circuit cited approvingly to decisions by the Second and Sixth Circuits, each of which explained that law enforcement agents called as witnesses by criminal defendants should automatically be treated as hostile, permitting the defendants to ask leading questions.  See United States v. Bryant, 461 F.2d 912, 918-19 (6th Cir. 1972); United States v. Freeman, 302 F.2d 347, 351 (2d Cir. 1962).

In Freeman, the Second Circuit held that the defendant should have been permitted to use leading questions when he called law enforcement agents from the Bureau of Narcotics as witnesses.  Freeman, 302 F.2d at 351.  The Court explained that:

> When a defendant calls government agents to the stand in an effort to establish some part of his defense he should be given every reasonable leeway in bringing out whatever may be relevant to the issues before the jury.  It is pointless to require a showing, such as the trial judge indicated might be necessary, that such witnesses are hostile. . . .  [T]here is even more reason for permitting [leading questions] in criminal cases where every proper means of ascertaining the truth should be placed at the defendant's disposal.

Id.  Similarly, in Bryant, the Sixth Circuit found that defendants should be permitted to ask leading questions of law enforcement agents unless the Government established that the witnesses were *not* hostile.  Bryant, 461 F.2d at 918-19.  The Court explained that while there were sound reasons for requiring a showing of hostility prior to permitting the use of leading questions on direct examination, the risks are not present when the witness is a government agent:

The vice of the leading question lies in its suggestion of an answer to a witness who, having been called by the party, is presumed to be inclined to favor the questioner.  If counsel were allowed routinely to lead a witness on direct examination, the evidence elicited would all too often be that of the lawyer, not of the witness.

This risk is not present when the defense is permitted to ask leading questions of a Government agent or of another witness closely identified with the interest of the Government (*e.g.,* the complaining witness).  It is realistic to assume, in such a case, that the witness will not be predisposed to accept suggestions offered by defense counsel's questions.  Such a witness . . . is not likely to be tractable on direct examination by defense counsel.  Accordingly, defense counsel should be permitted to lead such a witness unless the Government establishes that the witness is not hostile or biased against the defense.

Id.

More recently, the Southern District of Ohio determined that "a law enforcement official or other investigating agent (*regardless of whether he or she be a local, state or federal officer*)  may qualify as a witness identified with an adverse party in an action brought by the Government against criminal defendants, absent a positive showing by the Government that the witness is not hostile, biased or so identified with the adverse party that the presumption of hostility which is the cornerstone of Fed. R. Evid. 611(c) should not be indulged."  United States v. Duncan, 712 F. Supp. 124, 126 (S.D. Ohio 1988) (emphasis added).  As the Court explained:

Obviously, in a prosecution by the United States Government or one of its agencies, *a federal government official or agent will automatically be both an adverse party (as an agent thereof) and a witness identified with an adverse party*.  Should the Government wish to contest the Defendant's use of Rule 611(c), local and state (as opposed to federal) law enforcement officials may or may not be ultimately deemed hostile or a witness identified with an adverse party, depending upon their degree of involvement with the operative facts of the incident(s) being presented and/or the prosecution itself.

Id. at 126 n.2 (emphasis added).  Based on the persuasive authority of these three cases, two of which have been cited approvingly by the Ninth Circuit, Mr. Franco submits that investigating law enforcement agents called by him as witnesses should be considered either adverse parties or witnesses identified with adverse parties.

First, the ICE agents who participated in Operation Devil Horns—including but not limited to ICE Special Agent Chris Merendino, ICE Special Agent John Moore, ICE Special Agent Brian Ginn,

ICE Special Agent Rocio Franco, ICE Special Agent John Masalski, ICE Special Agent Jason Red, ICE Special Agent Ben Horton—should be automatically considered "adverse witnesses" as federal law enforcement agents.  After all, they are literally agents of the adverse party in a criminal prosecution by the federal government and its agencies.  <u>Duncan</u>, 712 F. Supp. at 126 n.2.  Further, they are clearly "witnesses identified with" with prosecution, as they are the law enforcement agents who conducted the investigation into the charged crime and who have aided the prosecution in preparing for trial. Importantly, none of the concerns identified by the Sixth Circuit that caution against the use of leading questions on direct examination are applicable: ICE agents who investigated and aided in the prosecution of Mr. Franco and his co-defendants cannot be "presumed to favor the questioner" when called as witnesses by the defense, and they "will not be predisposed to accept suggestions offered by defense counsel's questions."  <u>Bryant</u>, 461 F.2d at 918-19.  At bottom, as the Second Circuit explained, "[w]hen a defendant calls government agents to the stand in an effort to establish some part of his defense he should be given every reasonable leeway in bringing out whatever may be relevant to the issues before the jury." <u>Freeman</u>, 302 F.2d at 351.

Second, FBI agents who were investigating the 20th Street Clique and other MS-13 cliques in Northern California during this time period—including but not limited to FBI Special Agent Sandra Flores, FBI Special Agent Kenneth Karch, FBI Special Agent Elizabeth Wickman, FBI Special Agent David Parnell, FBI Special Agent John Posusney—should also be automatically considered "adverse witnesses" as agents of the federal government called as witnesses in a criminal prosecution by the federal government and its agencies.  Further, based on their "degree of involvement with the operative facts of the incident(s) being presented and/or the prosecution itself," they should be treated as "witnesses identified with adverse parties."  <u>Duncan</u>, 712 F. Supp. at 126 n.2.  While Operation Devil Horns was not a joint investigation, these FBI agents were conducting a parallel investigation into the same gang during the same time period, and there is ample evidence that they worked closely with the ICE agents' investigation.  For example, FBI Special Agent Sandra Flores has testified that she would regularly share information obtained from the FBI's confidential informants with ICE, and that she personally participated in several ICE operations (including the surveillance of a 20th Street Clique meeting and the execution of search and arrest warrants).  Further, there is little concern that these FBI agents, who investigated the 20th Street Clique during the same time period and assisted ICE with the

investigation that led to this prosecution, will be predisposed to accept suggestions offered by Mr. Franco's counsel or will be inclined to favor Mr. Franco over the prosecution, obviating the potential danger of permitting the use of leading questions on direct examination.

Third, SFPD Gang Task Force officers who were investigating the 20th Street Clique during this time period—including but not limited to Mario Molina, Scott Lau, John Cagney, Dion McDonnell, Tom Noolan, Scott McBride, Henry Espinosa—should be considered "witnesses identified with" the federal government based on their "degree of involvement with the operative facts of the incident(s) being presented and/or the prosecution itself." <u>Duncan</u>, 712 F. Supp. at 126 n.2.  The SFPD Gang Task Force was conducting an investigation into the same gang during the same time period as Operation Devil Horns and the parallel FBI investigation, sharing information and even government informants with the federal law enforcement agencies.  Further, SFPD Sergeant Mario Molina also worked closely with the prosecution in this case, and was even disclosed as an expert witness for the Government.  As is the case with the federal law enforcement agent witnesses, there is no reason to be concerned that members of the SFPD Gang Task Force will be predisposed to accept suggestions by defense counsel or will be inclined to favor Mr. Franco over the prosecution.

For the foregoing reasons, Mr. Franco requests permission to use leading questions on direct examination of law enforcement agents who participated in the investigation of the 20th Street Clique, including ICE agents, FBI agents, and SFPD Gang Task Force officers.

### B. Use of Leading Questions on Direct Examination of Government Informants and Other Cooperating Witnesses

Mr. Franco also submits that government informants who infiltrated the 20th Street Clique on behalf of the law enforcement agencies investigating the gang, as well as other cooperating witnesses who were once members of the 20th Street Clique or other MS-13 cliques in Northern California, are "witnesses identified with adverse parties," and thus requests permission to use leading questions on direct examination of these witnesses.

Although counsel can find no Ninth Circuit cases on point, there is persuasive authority from other Circuits indicating that a government informant's interest may be sufficiently on the side of the prosecution to be considered a "witness identified with" the Government under FRE 611(c), and by analogy, a cooperating witness who agrees to testify on behalf of the prosecution against a criminal

defendant may also be so considered, even absent a showing of hostility by the defendant.  In <u>Clingan v. United States</u>, 400 F.2d 849 (5th Cir. 1968), the Fifth Circuit held that a government informant who had assisted the Government in obtaining evidence regarding the criminal defendant could be called the defense as an adverse witness.  <u>Id.</u> at 851.  The Firth Circuit explained:

> Adversity need not be established only by the demeanor of the witness on the stand where the witness shows an unwillingness to testify except by an order of the Court.  A sufficient showing of adversity is made where the witness' interest is on the side of the prosecution to such an extent that he is unlikely to give a true account of the transaction.

<u>Id.</u>  In <u>Clingan</u>, the Court considered it relevant that the government informant had "previously discussed his testimony with the prosecution" but "refuse[d] to be interviewed by defendant's attorneys."  <u>Id.</u> Further, while the Sixth Circuit ultimately held in <u>Bryant</u> that the government informant witness was not adverse to the criminal defendant, it did not rule out the possibility that a government informant could be an adverse witness, as "a witness closely identified with the interest of the Government . . . ."  <u>Bryant</u>, 461 F.2d at 918-919.  The Sixth Circuit distinguished <u>Clingan</u> on the ground that the defendant's counsel had an opportunity to speak with the government informant witness prior to his testimony, and also noted that there was no evidence that he had participated in any other arrests.  <u>Id.</u>  From these cases, it appears that courts should look to whether a government informant is "closely identified with the interest of the Government," considering factors such as the degree of his involvement with the investigation and cooperation with the prosecution, his willingness to cooperate with the defense, and other factors indicating that he might be motivated to favor the prosecution (such as whether he received payment or other consideration for informing and/or testifying).

Under this reasoning, former ICE informant and cooperating witness Jaime Martinez should be considered sufficiently "closely identified with the interest of the Government" to be treated as a "witness identified with an adverse party" under FRE 611(c).  Unlike the informant in <u>Bryant</u>, who worked as paid informant for less than a month—the extent of his services was to make three controlled purchases of untaxed whiskey from the defendant, <u>see Bryant</u>, 461 F.2d at 915—Mr. Martinez worked for years as one of only two paid informants used by ICE during the course of Operation Devil Horns. His degree of involvement with the investigation was substantial—providing information during regular debriefings regarding a large number of people, wearing body wires at gang meetings, setting up

controlled sales of stolen cars to a fake chop-shop, etc.; in fact, Mr. Martinez was the only ICE informant from early 2006 through late 2007, during the period that Roberto Claro Acosta was deactivated. Further, Mr. Franco has remained closely involved in the prosecution of the case he helped investigate—reviewing recordings made by himself and by Mr. Acosta for the Government and testifying at two previous trials of Mr. Franco's co-defendants.

Further, while the prosecution has the ability to meet with and interview Mr. Martinez prior to his testimony, defense counsel will not have that opportunity. Finally, Mr. Martinez has received payment and other consideration from the Government, both as an informant and as a cooperating witness. Of course, the Government did not condition the consideration received by Mr. Martinez on his ability to obtain a conviction of Mr. Franco, but the fact that he received payment and immigration benefits from ICE as an informant and the possibility of leniency through his cooperation agreement, as well as protection for himself and his family, all indicate that Mr. Martinez might be motivated to favor the prosecution. Thus, there is little reason to be concerned that he will be predisposed to accept any suggestion offered by Mr. Franco's counsel through leading questions. Therefore, Mr. Franco should be permitted to ask Mr. Martinez leading questions on direct examination as a "witness identified with an adverse party," pursuant to FRE 611(c).

Mr. Franco also submits that cooperating witnesses who were once members of the 20th Street Clique—specifically Walter Palma, Jose Espinal, and Abraham Martinez—should also be considered sufficiently "closely identified with the interest of the Government" to be treated as a "witness identified with an adverse party." Although cooperators who were not government informants present a closer case, as they were not involved in Operation Devil Horns prior to their arrests, they have become closely involved in the prosecution of the case, as all three have testified for the Government at two previous trials of Mr. Franco's co-defendants. Moreover, while the prosecution will be able to interview the cooperators prior to their testimony, defense counsel will not have that opportunity. Further, while the Government did not condition their cooperation agreements on convictions, the fact that they may receive leniency in consideration for their testimony for the Government indicates that they may be motivated to favor the prosecution. Thus, these cooperating witnesses should be treated as "witnesses identified with an adverse party" under FRE 611(c).

1    Therefore, Mr. Franco requests that he be permitted to ask Jaime Martinez, Abraham Martinez,

2    Walter Palma, and Jose Espinal leading questions on direct examination.

3    **III.    CONCLUSION**

4    For the foregoing reasons, Mr. Franco respectfully requests that the Court grant his motion *in*

5    *limine* for an Order permitting him to use leading questions in his direct examination of law enforcement

6    agents who participated in the investigations of the 20th Street Clique or other MS-13 cliques in Northern

7    California, and of government informants and other cooperating witnesses who were once members

8    thereof.

                                        Respectfully submitted,

DATED: November 30, 2011

                                        LAW OFFICES OF GERI LYNN GREEN, LC


                                        By:_____/s/_____
                                             GERI LYNN GREEN
                                             Attorney for Defendant
                                             MANUEL FRANCO