GERI LYNN GREEN (SBN 127709)
Law Offices of Geri Lynn Green, LC
155 Montgomery Street, Suite 901
San Francisco, CA 94104
Tel: (415) 982-2600
Fax: (415) 358-4562
greenlaw700@gmail.com

Attorney for Defendant
MANUEL FRANCO

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>   v.<br><br>MANUEL FRANCO,<br><br>        Defendant. | No. CR 08-0730 WHA<br><br>**MOTION *IN LIMINE* # 21**<br><br>**DEFENDANT MANUEL FRANCO'S MOTION TO EXCLUDE JOSE ESPINAL'S TESTIMONY REGARDING OBTAINING GUNS FROM THE APARTMENT HE SHARED WITH MORIS FLORES ON APRIL 22, 2008**<br><br>Date:   December 14, 2011<br>Time:  1:30 p.m.<br>Dept:  Hon. William Alsup |

**I.    INTRODUCTION**

Defendant Manuel Franco hereby moves for an Order precluding cooperating witness Jose Espinal from testifying about obtaining guns from the apartment that Mr. Franco shared with his co-defendant and brother-in-law Moris Flores on April 22, 2008, under Federal Rule of Evidence ("FRE") 403, on the ground that its probative value is substantially outweighed by the danger of unfair prejudice.

Specifically, the danger that Mr. Franco will be unfairly prejudiced by Mr. Espinal's testimony about a cold-blooded shooting done by members of the 20th Street Clique with guns obtained from the apartment where Mr. Franco lived with his wife and her brother, Mr. Flores, substantially outweighs the limited probative value of such testimony, which establishes only that Mr. Franco was present when his brother-in-law brought 20th Street Clique members back to their apartment to provide them with guns.

\\\

\\\

## II. BACKGROUND

The Government will likely seek to elicit testimony from Mr. Espinal regarding a shooting that allegedly occurred near the intersection of 20th and Bryant Streets in San Francisco on April 22, 2008. At the April 2011 trial, Mr. Espinal testified in detail about the shooting itself, Reporter's Transcript ("R.T."), Vol. 54, at 10536-10541, which was apparently done for no particular reason—Mr. Espinal, Jonathan Cruz-Ramirez, a/k/a "Soldado," Carlos Flores, a/k/a "Lobo," and "Droops" were allegedly hanging out at Mission Playground when they decided that they should go do a "hit" and asked Mr. Flores for weapons, R.T., Vol. 54, at 10531-10532. Mr. Espinal testified that Mr. Flores told the others to drive to the apartment that he shared with his sister and her husband, Mr. Franco, to obtain guns. R.T., Vol. 54, at 10532. There was no indication from Mr. Espinal's testimony that Mr. Franco had any idea that his brother-in-law was bringing people to the apartment; Mr. Franco's was at home with his wife, who had been preparing food. R.T., Vol. 54, at 10532-10533.

Although Mr. Espinal initially testified that they were given the guns by both Mr. Franco and Mr. Flores, R.T., Vol. 54, at 10533-10534, it became clear on cross-examination that he had no actual recollection of who did what. In fact, despite prodding from Mr. Flores's counsel, Mr. Espinal was unable to recall anything specific about Mr. Franco's role in the alleged transaction, other than vague testimony that both Mr. Franco and Mr. Flores "showed" the guns:

> **Q.** OKAY. AND WHERE DID THE GUNS COME FROM WITHIN THIS APARTMENT?
>
> **A.** COULD YOU REPEAT IT AGAIN?
>
> **Q.** YEAH. YOU SAY THAT THESE GUNS WERE BROUGHT OUT BY THEM. WHERE DID THEY GET THEM IN THE APARTMENT? WHERE DID THE GUNS COME FROM?
>
> **A.** I DON'T KNOW, BECAUSE WE WERE KIND OF LIKE THERE WHEN THEY SHOWED UP, AND THEN THEY – THEY SAID HERE THEY ARE, AND WHEN THEY OPENED THEM UP.
>
> **Q,** WERE SLOW AND DREAMER HOLDING THE TWO GUNS TOGETHER, ONE NEXT TO THE OTHER, BOTH OF THEM HOLDING THE GUNS WHEN THEY OPENED THEM UP?
>
> **A.** THE GUNS WERE KIND OF LIKE JUST THERE ON THE GROUND, PLACED THERE.

> **Q.** WHEN YOU FIRST WALKED INTO THE APARTMENT, THE GUNS WERE JUST LYING ON THE FLOOR?
>
> **A.** NO.
>
> **Q.** ALL RIGHT. I'M ASKING YOU, WHERE DID THE GUNS COME FROM WHEN YOU FIRST SAW THEM?
>
> **A.** I DO NOT KNOW WHERE THEY WERE COMING FROM, BUT I KNOW THAT THE ONES WHO SHOWED THEM TO US WERE SLOW AND DREAMER.
>
> **Q.** WHO HELD THE .38 WHEN YOU FIRST SAW IT?
>
> **A.** SLOW GRABBED IT AND SAID THAT THAT ONE WASN'T ANY GOOD, THAT IT WOULDN'T SHOOT.
>
> **Q.** SLOW GRABBED IT FROM WHERE?
>
> **A.** THEY WERE KIND OF ALREADY PLACED LIKE ON THE GROUND, AND HE PICKED ONE UP AND HE SAID, WELL, THIS ONE DOESN'T WORK. IT DOESN'T FIRE.
>
> **Q.** WHO PUT THEM ON THE GROUND?
>
> **A.** I DON'T REMEMBER THAT, WHICH ONE OF THE TWO HAD THE BAG WITH THEM. THAT I DON'T REMEMBER. BUT – BUT, BOTH OF THEM SAID, HERE THEY ARE.
>
> **Q.** OKAY. SO, YOU DON'T REMEMBER WHO BROUGHT THE GUNS OUT? AS YOU ARE SITTING HERE RIGHT NOW, YOU DON'T REMEMBER WHO BROUGHT THE GUNS OUT IN THAT APARTMENT?
>
> **A.** I DON'T KNOW WHICH ONE OF THEM WAS LIKE HOLDING – HOLDING THE BAG. BUT BOTH OF THEM, BOTH SLOW AND DREAMER, WERE SHOWING THEM.
>
> **Q.** OKAY. IT WAS YOUR BELIEF THAT BOTH SLOW AND DREAMER LIVED IN THIS APARTMENT?
>
> **A.** YES, BOTH OF THEM LIVED THERE.

R.T., Vol. 56, at 10871-10873. In sum, Mr. Espinal will likely testify in detail about a cold-blooded shooting done for no particular reason with guns obtained from Mr. Franco's apartment, but will be

unable to recollect any specifics about Mr. Franco outside of the fact that he was present at his own home with his wife when they arrived.

### III.     ARGUMENT

The Court may exclude relevant evidence, under FRE 403, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  As the Ninth Circuit has explained, "[w]here the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury."  United States v. Hitt, 981 F.2d 422, 424 (9th Cir. 1992).

Here, the slight probative value of testimony about a shooting done by members of the 20th Street Clique with guns obtained from the apartment where Mr. Franco lived with his wife and brother-in-law is substantially outweighed by the danger of unfair prejudice.  Mr. Espinal's testimony is at best marginally probative of Mr. Franco's participation in any charged conspiracy; in fact, there is no indication that Mr. Franco would have even been present during the transaction but for the coincidence that he happened to be home with his wife when Mr. Flores brought members of the 20th Street Clique back to their shared apartment.  Further, Mr. Espinal was unable to recollect any specifics about what role, if any, Mr. Franco played in "showing" the guns—while he recalled specifics about Mr. Flores picking up one of the guns and commenting on its utility, he could remember nothing but generalities about Mr. Franco.

By contrast, evidence of a cold-blooded shooting committed with guns obtained from Mr. Franco's home creates a substantial danger of unfair prejudice, i.e., "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Old Chief v. United States, 510 U.S. 172, 180 (1997).  Testimony about a premeditated shooting apparently done without any particular motive will "have a visceral impact that far exceeds its probative value," Hitt, 981 F.2d at 424, and disgust at the violence committed with guns allegedly obtained from Mr. Franco's home will likely inflame the jury against him, creating a substantial risk that he will be convicted based on "guilt by association," rather than based on the jury's judgment of his guilt or innocence of the crimes charged.  See United States v. Melchor-Lopez, 627 F.2d 886, 890 (9th Cir. 1980) (holding that "there can be no conviction for guilt by association" and that "mere association with members of a conspiracy . . . is not sufficient to make one a conspirator").  It would be particularly unfairly prejudicial if Mr. Franco

were convicted due to his association with his wife's brother. Further, the fact that those who actually did the heinous shooting are not on trial is "likely to provoke an instinct to punish separate and apart from any relation" to the jury's determination of whether the Government has met its burden of proof, creating the danger that Mr. Franco will be convicted by an emotional jury wanting to ensure that somebody is punished for the shooting. United States v. Brooke, 4 F.3d 1480, 1487 (9th Cir. 1993). This danger substantially outweighs the marginal probative value of Mr. Espinal's testimony.

### IV. CONCLUSION

For the foregoing reasons, Mr. Franco respectfully requests that the Court grant his motion *in limine* to exclude any testimony by Mr. Espinal about obtaining guns from Mr. Franco's apartment on April 22, 2008, under FRE 403.

Respectfully submitted,

DATED: November 30, 2011

LAW OFFICES OF GERI LYNN GREEN, LC

By:_____/s/_____
    GERI LYNN GREEN
    Attorney for Defendant
    MANUEL FRANCO