MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

W.S. WILSON LEUNG (CABN 190939)
DEREK R. OWENS (CABN 230237)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-6758/6959
   Facsimile: (415) 436-6753
   E-Mail: wilson.leung@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br>    v. </br></br> MANUEL FRANCO, </br></br>    Defendant. | No. S3-08-CR-0730-WHA </br></br> GOVERNMENT'S MOTION TO QUASH RULE 17(c) SUBPOENA </br></br> Date:  December 19, 2011 </br> Time:  12:30 pm </br> Court:  Hon. William Alsup |

**I.    Introduction**

      The Government respectfully moves to quash defendant Manuel Franco's Fed. R. Crim. P. 17(c) subpoena dated November 21, 2011 and served upon the Federal Bureau of Investigation ("FBI") sometime thereafter (the date of service is not indicated on the subpoena itself). The subpoena directs the FBI to provide a variety of materials that are either irrelevant, that fall under the ambit of Fed. R. Evid. 16(a) and other applicable rules and laws, or that have already been produced. Accordingly, the defendant's subpoena is merely an attempt to abuse Rule 17(c) to make an end-run around criminal discovery rules or is a fishing expedition intended to get

material to which the defendant is not entitled.  The defendant's subpoena should be quashed in its entirety.[1]

## II. Applicable Law

### A. The Government's Standing

"A party to a criminal case 'has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests.'" United States v. Jenkins, 895 F. Supp. 1389, 1393 (D. Haw. 1995) (quoting United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982)).  Here, the Government has a legitimate interest in preventing the defendant from making an end-run around well-established rules and case law relating to criminal discovery and other disclosures.  See Order Granting Motion to Quash Subpoena in United States v. Cerna, et al, 08-CR-0730-WHA (March 9, 2011) (Docket #3673), n.3.

### B. Applicable Law

Rule 17(c) subpoenas duces tecum are not to be used as discovery devices.  Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951) ("Rule 17(c) was not intended to provide an additional means of discovery.  Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."); United States v. Reed, 726 F.2d 570, 577 (9th Cir. 1984) ("Rule 17(c) was not intended as a discovery device, or to 'allow a blind fishing expedition seeking unknown evidence.'") (citation omitted); Jenkins, 895 F. Supp. at 1395 ("... it is well established that Rule 17 is not a discovery device") (citing United States v. Nixon, 418 U.S. 683, 699 (1974)); United States v. Reyes, 162 F.R.D. 468, 471 (S.D.N.Y. 1995) (with motion to quash, court reviews the subpoena and applies the Nixon

---

[1] As the Government confirmed during the December 14, 2011 pre-trial conference in this matter, it will be providing additional documents to the defendant shortly relating to his former status as an information with the FBI.  The information contained in these documents is largely, if not entirely, duplicative of information already provided to the defendant, but the Government will be making this production anyway out of an abundance of caution.  This disclosure, however, is *not* a response to the subpoena and does not render moot the present motion to quash.  For the reasons set forth herein, the defendant's subpoena is improper as a matter of law and should never have been issued.  In addition, the subpoena is also overbroad and unduly burdensome as written, which provides an additional basis for quashing.

1  standard to ensure that subpoena not being used as an additional discovery device); United States
2  v. Marcello, 423 F.2d 993 (5th Cir. 1970) (subpoena properly quashed when defendant
3  improperly tried to use as a discovery device).
4        In other words, "[i]t was not intended by Rule 16 to give a limited right of discovery, and
5  then by Rule 17 to give a right of discovery in the broadest sense." Bowman, 341 U.S. at 220;
6  Nixon, 418 U.S. at 698 (citing Bowman, 341 U.S. at 220); United States v. Cuthbertson, 651
7  F.2d 189, 192 (3rd Cir. 1981); United States v. Poindexter, 725 F. Supp. 13, 28 (D.D.C. 1989)
8  ("[P]re-trial return dates ought not be used improperly as blank checks for the use of trial
9  subpoenas *duces tecum* as a supplemental discovery device."); Beckford, 964 F. Supp. at 1022.
10       To prevent this type of abuse, the Supreme Court, in Nixon, held that pretrial production
11 of evidence pursuant to Rule 17(c) is appropriate only where the moving party can show: (1) that
12 the documents or items sought are evidentiary and relevant; (2) that they are not otherwise
13 procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot
14 properly prepare for trial without such production and inspection in advance of trial and that the
15 failure to obtain such inspection may unreasonably delay the trial; and (4) that the application is
16 made in good faith and is not intended as a "general fishing expedition." Nixon, 418 U.S. at 699.
17 In short, the party seeking the Rule 17(c) subpoena for pre-trial production of documents or
18 materials must demonstrate relevancy, admissibility, and specificity. Nixon, 418 U.S. at 700;
19 Reed, 726 F.2d at 577; Beckford, 964 F. Supp. at 1022.
20       It is important to note that under this test the documents sought "cannot be *potentially*
21 relevant or admissible, they must meet the test of relevancy and admissibility at the time they are
22 sought." United States v. Marchisio, 344 F.2d 653, 669 (2d Cir. 1965) (emphasis added); see
23 also United States v. Cherry, 876 F. Supp. 547, 552 (S.D.N.Y 1995); United States v. Burger,
24 773 F. Supp. 1419, 1425 (D. Kan. 1991). Thus, Rule 17(c) is different from the civil rules which
25 permit the issuance of subpoenas to seek production of documents or materials which, although
26 themselves not admissible, may lead to admissible evidence. See Cherry, 876 F. Supp. at 552;
27 see also United States v. Gross, 24 F.R.D. 138, 141 (S.D.N.Y. 1959) (Rule 17(c) cannot be used
28 "to obtain leads as to the existence of additional documentary evidence or to seek information

relating to the defendant's case. This type of discovery, permissible under the Federal Rules of Civil Procedure, has not been authorized for criminal trials.").

It is left to the trial court's discretion to determine whether a party seeking a Rule 17(c) subpoena has met these requirements. United States v. Eden, 659 F.2d 1376, 1381 (9th Cir. 1981). "That discretion must be exercised in remembrance of the responsibility to prevent Rule 17(c) from being improperly used as a discovery alternative to Rule 16." Beckford, 964 F. Supp. at 1022; United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) (vesting of discretion with court necessary "to ensure that subpoenas are not used for impermissible discovery, which is more likely to be the case when advance production of materials is sought ..."). Indeed, without the court's supervision, "Rule 17(c) would lend itself to discovery of the broadest sort — a result that the drafters of the Rule decried." United States v. Finn, 919 F. Supp. 1305, 1329 (D. Minn. 1995).

In addition, to the extent that a defendant's Rule 17(c) subpoena purports to seek Brady, Giglio, or Jencks Act material, it is improper and should be quashed, because "those materials are subject only to limited discovery pursuant to Fed. R. Crim. P. 16, Brady v. Maryland, 373 U.S. 83 (1963), [Giglio v. United States, 405 U.S. 150 (1972)], and the Jencks Act, 18 U.S.C. § 3500." Beckford, 964 F. Supp. at 1031. "Thus, none of that material can be said to be 'not otherwise procurable reasonably in advance of trial.'" Id. at 1032.

Accordingly, Rule 17(c) subpoenas are not available to obtain exculpatory/Brady information in the possession of the prosecution. See Cuthbertson, 651 F.2d at 195. Nor are Rule 17(c) subpoenas appropriate to obtain impeachment or Giglio material. See United States v. Fields, 663 F.2d 880, 881 (9th Cir. 1981) (where defendant's purpose for seeking Rule 17(c) subpoena was to obtain impeachment material, subpoena quashed as improper); Nixon, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); Cuthbertson, 651 F.2d at 195 (hearsay evidence which could only be used for impeachment may not be obtained by a Rule 17(c) subpoena); United States v. Hughes, 895 F.2d 1135, 1145-46 (6th Cir. 1990) (Rule 17(c) subpoena to a third party for impeachment material improper); Jenkins, 895 F. Supp. at 1393-94. Moreover, Rule 17 itself

prohibits procuring Jencks Act materials through the use of a Rule 17(c) subpoena. Fed. R. Crim. P. 17(h) ("Information Not Subject to a Subpoena. No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement."); Beckford, 964 F. Supp. at 1032. A defendant may not serve a subpoena in order to circumvent the discovery rules on the mere hope that it might uncover tangential impeachment evidence about potential witnesses. See Nixon, 418 U.S. at 699-700; Cuthbertson, 630 F.2d at 146 ("broad request" for documents "based solely on th[e] 'mere hope' that some exculpatory material might turn up" does not justify enforcement of Rule 17(c) subpoena); United States v. Purin, 486 F.2d 1363, 1368 (2d Cir. 1973).

### III. Discussion

The defendant's subpoena demands read like a discovery request made in his pending civil case. It seeks eight broad categories of documents, to wit:

(1) Any and all "DOCUMENTS" related to the FBI's suitability determination of Manuel Franco for registration as a Confidential Informant, between September 30, 2005 and February 21, 2006, including but not limited to the Initial Suitability Report and Recommendation ("ISR&R"), the written approval of the ISR&R by a FBI Field Manager, and any documents of the investigation into Manuel Franco's suitability, including but not limited to efforts to establish his true identity, criminal history, MS-13 gang membership, and reputation;

(2) Any and all "DOCUMENTS" that were included in Manuel Franco's Confidential Informant files in registering him as a Confidential Informant for the FBI, including but not limited to the mandatory documentation of the efforts to establish his true identity, the results of the criminal history check, and of any promises or benefits, and the terms of such promises or benefits, that were given to Manuel Franco by any law enforcement agency or prosecuting office, if available to the FBI;

(3) Any and all "DOCUMENTS" evidencing any payment to Manuel Franco between September 30, 2005 and October 22, 2008, regardless of how recorded or maintained, including but not limited to any and all logs, book accountings, receipts or any other document evidencing any payment of fees, rewards, or reimbursements to Manuel Franco for information, services, or expenses, and any documentation of reimbursements to any law enforcement agent for payments made to Manuel Franco;

(4) Any and all "DOCUMENTS" related to the FBI's supervision of Manuel Franco as a Confidential Informant and/or Confidential Human Source between February 5, 2006 and October 22, 2008, including but not limited to validation review reports, Continuing Suitability Reports and Recommendations ("CSR&R"), written approvals of each CSR&R by FBI Field Managers, and any and all records relating to the precautionary measures taken to monitor Manuel Franco's activities;

    (5) Any and all "DOCUMENTS" related to any internal FBI investigations of Manuel Franco between February 5, 2006 and October 22, 2008, including but not limited to any reports made to any FBI supervisor of information that might materially alter a prior suitability determination, any records of the actions taken by any FBI agent who had reason to believe that Manuel Franco engaged in unauthorized criminal activity, any notification of unauthorized criminal activity to any federal prosecutor, and any records documenting that unauthorized criminal activity by Manuel Franco was brought to the attention of the FBI and/or the U.S. Attorney's Office;

    (6) Any and all "DOCUMENTS" related to the replacement of Manuel Franco's Control Agent and/or Case Agent in or around September 2007, including but not limited to any documents evidencing FBI Special Agent Sandra Flores's temporary assignment to Iraq, whether Manuel Franco was ever contacted by Agent Flores's replacement and/or any efforts to do so, and any instructions or other information provided by Agent Flores to her replacement regarding Manuel Franco;

    (7) Any and all "DOCUMENTS" relating to the closing of Manuel Franco as a Confidential Human Source between September 2007 and February 5, 2010, including but not limited [sic] documentation of the attempts to contact Manuel Franco at FBI Special Agent Sandra Flores's request from October 31, 2007 through January 8, 2008 and the identity of the FBI agent(s) who made those attempts, the mandatory records documenting the reasons for the decision to close Manuel Franco, the revocation of his authorization to engage in otherwise illegal activity, and any reports evidencing the steps taken o notify Manuel Franco that he had been closed.

    (8) Any and all "DOCUMENTS" provided to the FBI by any member of the San Francisco Police Department ("SFPD") between September 30, 2005 and July 28, 2011, related to Manuel Franco's status and/or work as a confidential informant, and made and kept in the ordinary course of business in the SFPD's informant files.

The subpoena should be quashed.

First, the subpoena is improper as a matter of law. As set forth above, Bowman Dairy Co. v. United States, 341 U.S. 214 (1951), and all relevant case law clearly hold that Rule 17(c) is not supposed to be used merely to pursue criminal discovery or to probe for Brady material. Yet, seeking discovery and fishing from Brady — whether for the defendant's criminal case or his civil case — are precisely what the defendant is trying to do with his present subpoena. For this reason alone, the subpoena to the FBI should never have been issue and should be quashed. If the defendant had any discovery claims relating to his criminal case, he should have filed a discovery motion instead.

Second, even if the Court overlooks the defendant's improper use of Rule 17(c), the subpoena seeks information that has already been provided to him. For instance, as the

-6-

defendant acknowledged during the December 14, 2011 pre-trial conference, he long ago received more than a hundred pages of reports memorializing his activities as an informant. In addition to these reports, the Government long ago also provided the defendant with the consensual recordings he made as an informant, as well as draft transcripts/summaries of some of these recordings. Similarly, on February 19, 2010, the defendant was provided with an itemized list of payments made to him (i.e., $4,770 for services and $4,621.72 for expenses such as cellular telephone bills, gas, BART fare) as well as a letter detailing the steps the FBI took to contact him between October 30, 2007 and January 8, 2008, when he was formally deactivated as an informant after the FBI could not establish contact with him (defense counsel read from this letter during the pre-trail conference on December 14, 2011). Then on March 31, 2010, the defendant was further provided with a list itemizing his investigative activities as well as copies of five Otherwise Illegal Activities authorization forms, which the defendant signed.[2] The Government has also advised defense counsel that the FBI does not possess any San Francisco Police Department informant files relating to the defendant.[3]

Third, the subpoena is completely overbroad and vague and seeks irrelevant material. For instance, the defendant's demand for any and all documents relating to the reimbursement of expenses would call for the FBI's internal reimbursement forms, which are completely irrelevant to the pending criminal case. Likewise, receipts submitted for investigative expenses is also irrelevant. Furthermore, the defendant's demand for any and all documents "evidencing FBI Special Agent Sandra Flores's temporary assignment to Iraq" is so far afield of anything probative that it is a complete frolic. Moreover, the demand for any and all documents that "*might* materially alter a prior suitability determination" is both vague and overbroad.

---

[2] Some of these authorization forms were offered into evidence during the five-month trial racketeering trial this summer (see GX 1030) and, as the Court has seen, the authorizations specifically were limited to a period of 90 days each, specifically authorized only certain illegal activities, and explicitly prohibited all other illegal activities, especially any act of violence.

[3] Defense counsel insists that the SFPD maintained copious, detailed records relating to the defendant as its informant and then sent the original records to the FBI without keep a copy for itself. This claim is wrong; indeed, it makes no sense even on an intuitive level.

IV.     **Conclusion**

For all of the foregoing reasons, the defendant's subpoena to the FBI should be quashed in its entirety. It is legally improper, seeks information that has already been provided to him, and is vague and overbroad and calls for irrelevant information. Rather than meeting <u>Bowman Dairy Co</u>'s strict standards, the defendant is merely engaging in a fishing expedition for speculative discovery relating to his criminal and/or civil case. Accordingly, the defendant's subpoena should be quashed. <u>See</u> Order Granting Motion to Quash Subpoena in <u>United States</u> v. <u>Jordan</u>, 10-CR-00669-WHA (Jan. 18, 2011) (Docket #46).

DATED: December 16, 2011

                                       Respectfully submitted

                                       MELINDA HAAG
                                       United States Attorney

                              By:      /s/
                                   W.S. Wilson Leung
                                   Assistant United States Attorney