**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED STATES OF AMERICA,                    No. CR 08-0730 WHA

11              Plaintiff,

12      v.                                        **OMNIBUS ORDER RE PRETRIAL**
                                                  **MOTIONS FOR JANUARY 4 TRIAL**
13   MANUEL FRANCO.

14              Defendant.

15   _____/

16                         **INTRODUCTION**

17          In this massive RICO/VICAR prosecution, severed defendant Manuel Franco is

18   proceeding to trial on January 4.  Numerous pretrial motions were filed by the government and

19   defendant Franco.  The motions were heard at a final pretrial conference held on December 14.

20   This omnibus order addresses these final pretrial motions.

21          As with all evidentiary rulings, a denial of a motion to exclude evidence does not

22   necessarily mean that the evidence will be admitted — it only means that the motion did not

23   articulate sufficient grounds to exclude the evidence.  At trial, counsel must lay a proper

24   foundation before evidence is admitted.

25                **DEFENDANT FRANCO'S PRETRIAL MOTIONS**

26   **1.      MOTION *IN LIMINES* 1 & 25:  COCONSPIRATOR STATEMENTS**

27          Defendant Franco seeks to exclude all coconspirator statements noticed by the government,

28   arguing that the government will not be able to show that he participated in any of the charged

conspiracies.  As stated at the pretrial conference, the motion is **DENIED WITHOUT PREJUDICE**.

The government has made a sufficient preliminary showing that the three charged conspiracies

existed and that defendant Franco had knowledge of the conspiracies and participated in them at

some point in time.  No noticed coconspirator statement will be excluded at this juncture and no

evidentiary hearing is needed to determine when defendant Franco participated in the charged

conspiracies.  Instead, challenges to coconspirator statements should be raised on an individual

basis at trial so that the undersigned can more specifically assess whether the challenged statement

was made at a time when defendant Franco was still participating in the conspiracies and whether

the statement was in furtherance of the conspiracies.[1]  These particularized challenges should be

made outside of the presence of the jury during the 7:30 a.m. morning proceedings, before the

statement's sponsor is expected to testify.

Alternatively, if a witness testifies to a coconspirator statement for which the defense

later shows that the foundational requirements were not met, the undersigned will give a curative

instruction to the jury, allow the prosecution to reopen the case to establish foundation, or in an

extreme case, declare a mistrial.

The government must, however, provide additional information to the defense regarding

coconspirator statement number 228, as the current summary is inadequate.[2]  This supplemental

information must be provided by **WEDNESDAY, DECEMBER 28 AT NOON**.

### 2.    MOTION *IN LIMINES* 2, 3, 4 & 5:  COCONSPIRATOR ACTS

Defendant Franco seeks to exclude or limit *all* evidence of acts committed by his

coconspirators.  In the alternative, defendant Franco seeks to exclude or limit coconspirator acts

that occurred prior to his entry into the conspiracy, after he became an informant, and after his

arrest on October 22, 2008.  Defendant Franco argues that the acts of his coconspirators at all

times and specifically during the times called out in his motions should be excluded under Rule

---

[1]  As previously stated, the evidence is clear that the three conspiracies existed at the times in which all noticed coconspirator statements were made.  No further determination on that foundational requirement is needed.

[2]  The motion also challenges the summary for statement number 229 as not containing sufficient detail but the coconspirator statement summaries do not appear to include a statement number 229.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

403.  As stated at the pretrial conference, the request to exclude *all* coconspirator act evidence is **DENIED**.  Although defendant Franco argues that the acts of his coconspirators are minimally probative because he does not contest that his coconspirators committed acts of violence, the government must still prove up the nature and scope of the conspiracies, as well as the contemplated pattern of racketeering activity.  There is no basis to completely exclude the acts of defendant Franco's coconspirators from evidence at trial.

Similarly, as stated at the pretrial conference, with the exception of the February 2009 Daly City shootings, the motions to exclude coconspirator acts that occurred prior to defendant Franco's entry into the conspiracy, after he became an informant, and after he was arrested on October 22, 2008, are **DENIED WITHOUT PREJUDICE** to more specific challenges to specific incidents.  It has not yet been shown that any particular coconspirator act will be completely inadmissible for any purpose.  For example, although defendant Franco cannot be held substantively liable for the acts of his coconspirators prior to his entry into the conspiracy or after his incarceration, evidence of the acts of his coconspirators predating his entry into the conspiracy and after his incarceration may be admitted for certain limited purposes, such as proof of the existence and scope of the alleged racketeering enterprise.  *See, e.g., United States v. Basciano*, 599 F.3d 184, 207 (2d Cir. 2010) (citation omitted); *United States v. Brown*, 943 F.2d 1246, 1255 (9th Cir. 1991); *United States v. Wentz*, 456 F.2d 634, 637 (9th Cir. 1972).  Of course, at some point, the evidence may become cumulative or unfairly prejudicial.  At that time, defendant Franco may raise a new, particularized Rule 403 motion.

Defendant Franco also moves for a limiting instruction for when the government's witnesses testify about their prior bad acts and for a limiting instruction regarding the proper use of coconspirator acts by the jury.  There may be circumstances where such limiting instructions are appropriate, but counsel must specifically request the relevant instruction at the time the instruction is requested to be given to the jury.

### 3.     MOTION *IN LIMINE* 6:  INVOLUNTARY STATEMENTS

Defendant Franco seeks to exclude statements he made to SFPD officers and ICE agents on August 26, 2008, September 18, 2008, September 26, 2008, and October 22, 2008, alleging

United States District Court

For the Northern District of California

1    that the statements were involuntary and the result of unlawful coercion.[3]  After full

2    consideration of all moving papers, the arguments of counsel at the pretrial conference, the audio

3    recordings of the interviews, *defense* counsel's transcriptions of certain portions of the

4    interviews contained in her declarations, the declaration of Special Agent Brian Ginn, and the

5    copy of the October 22 written *Miranda* waiver submitted by defense counsel, the motion is

6    **DENIED**.[4]  No evidentiary hearing is needed as neither side has identified any disputed issue of

7    material fact.

8            Defendant Franco's statements during all four interviews were made freely, voluntarily,

9    and without compulsion or inducement of any sort.  Although the motion posits that defendant

10   Franco's statements were involuntary and coerced because: (1) the interviewing officers

11   "promoted [defendant Franco's] fantasy of being a law enforcement officer"; and (2) threatened

12   defendant Franco and his family by discussing defendant Franco's safety, a review of the

13   supposedly coercive statements by the officers and the entirety of the interviews (three of four

14   which were non-custodial) reveal that the officers did not coerce defendant Franco.

15           *First*, defendant Franco argues that statements by SFPD Inspector Cagney regarding

16   defendant Franco's interest in working for the California Highway Patrol and the San Francisco

17   Sheriff's Department (not the SFPD), preyed on defendant Franco's "fantasy" of becoming a law

18   enforcement officer and coerced defendant Franco into making involuntary statements.  This

19   argument is rejected.  It has not been shown that Inspector Cagney's vague offers to help

20   defendant Franco with his job search were disingenuous — but even if they were, they did not

21   constitute coercive conduct prohibited by the Fifth Amendment.  Officers may tell an in-custody

22   defendant that they will put in a good word with the prosecutor on that defendant's behalf,

23   without rendering subsequent statements by the defendant involuntary.  *See, e.g., United States*

24

25           [3]  The motion is being considered on the merits although it is a repeat of a motion that was filed and
     denied as untimely almost one year ago and for which the undersigned also rejected a prior reconsideration

26   motion because counsel failed to articulate any good cause for the late-filing (Dkt. Nos. 3154, 3616, 3525).

27           [4]  The undersigned did not rely on the government's transcriptions of the interviews as authoritative.
     Instead, at defense counsel's request, the government's transcriptions were used as aids only and the

28   undersigned made independent determinations on what was said during the interviews based on the audio
     recordings.  (Dkt. No. 5556 at 2).  In any event, the undersigned finds that any discrepancies between the
     recordings and the government transcripts are immaterial for purposes of the instant motion.

*v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994). Here, defendant Franco was not even in custody — he was *voluntarily* meeting with Inspector Cagney of his own volition (at the Hall of Justice on August 26 and at a restaurant on September 18) and Inspector Cagney's offer to *possibly* help defendant Franco was unrelated to any pending criminal charges against him.

*Second*, defendant Franco's assertion that ICE agents took advantage of his misconception that he was "member of the law enforcement team" or otherwise working on behalf of the government is not borne out by the record. The agents made clear to defendant Franco that he was not under any obligation to talk to them and only referred to defendant Franco's informant status in the *past* tense. Defendant Franco's statements during his interviews also illustrate that he was well aware he was not working for the government at the time. For example, during his September 18 interview, defendant Franco himself acknowledged:

> AGENTS:   But you are not currently signed up right now, are you?
> FRANCO:   No.
> AGENTS:   Okay. Are you an informant for anybody right now?
> FRANCO:   No.

How can counsel claim otherwise? It is a mystery.

*Third*, defendant Franco argues that statements by the ICE agents regarding his safety coerced him into making involuntary statements. Specifically, defendant Franco points to his non-custodial interview on August 26, 2008, wherein ICE agents commented on the gang's violence ("people get knocked off all the time"), and his non-custodial interviews on September 18, 2008, and September 26, 2008, wherein ICE agents stated concern for defendant Franco's safety in the future and stated that defendant Franco would have to be 100% honest if he wanted to cooperate with the government. Although in some instances, statements about an individual's safety in conjunction with offers to protect that individual if he fully cooperates might be coercive, here, the recordings make clear that the agents did not coerce defendant Franco into making involuntary statements.

At no point did the agents assert that if defendant Franco did not cooperate with them, he or his family would be unsafe. The agents' statements made clear that they did not view

defendant Franco to be in *present* danger.[5]  Instead, the vast majority of references to defendant Franco's safety were made with respect to his safety *in the future* should he work with law enforcement.  Given that the interviews were voluntary and defendant Franco was clearly instructed that he was free to leave at any time, these statements should have *discouraged* defendant Franco from making further statements.  In other words, the agents were explaining that should he choose to cooperate with them, safety precautions may be necessary.  The officers were not asserting that defendant Franco needed to cooperate to assure his present safety — they were seeking defendant Franco's cooperation and explaining the complications that could arise out of any such cooperation.  The only statement by the agents that was tied explicitly with defendant Franco's *present* safety was the agents' expressed concern that defendant Franco's wife (defendant Moris Flores' sister) would reveal to defendant Flores that defendant Franco had spoken to law enforcement.  This statement was made towards the very end of the interview on September 26, 2008, and the context of the statement made clear that the agents were discussing the topic because they were genuinely concerned about the risk that defendant Franco's wife *could* pose and were cautioning defendant Franco to be careful.  Defendant Franco's responses made clear that he did not share the agents' concern.

*Fourth*, the motion has not raised any basis to conclude that defendant Franco's *Mirandized* post-arrest statements made on October 22, 2008, were involuntary.  The motion does not identify any particular statement or conduct by law enforcement during that interview as coercive and the Court itself can find no evidence of coercive statements or conduct in the audio recording.  Notably, defendant Franco was advised of his *Miranda* rights at the outset of the interview and signed a written *Miranda* waiver.  Counsel's even-later assertion that an evidentiary hearing is needed to determine whether defendant Franco's written *Miranda* waiver was voluntarily given is overruled (Dkt. No. 5556 at 2).  As counsel is well-aware, the deadline for motions to suppress was over one and a half years ago, prior to defendant Franco's severance

---

[5]  For example, when the agents spoke to defendant Franco about his being green-lighted in the past, the agents were speaking about a historical fact that was not surprising or alarming to defendant Franco.  The conversation was clear that defendant Franco believed he had regained the trust of his fellow gang members and was no longer green-lighted.

from prior trials.  Nonetheless, despite the untimeliness of the instant motion (and notwithstanding the fact that it was previously been denied as untimely on multiple occasions), the Court has considered the challenges raised therein on the merits.  The late-raised, vague, and completely unsupported new assertion that the officers engaged in some coercive conduct after defendant Franco's arrest but before his written *Miranda* waiver does not warrant an evidentiary hearing, especially in light of the fact that the recording of the interview captures defendant Franco's signing of the waiver and there is no indication of coercion on the recording.  Further, although defense counsel asserted at the pretrial conference that the interview may have occurred at defendant Franco's home in the presence of his wife and children, the recording makes clear that defendant Franco and the agents were in an interview room and defendant Franco's family was not present.

Finally, the tone and pace of all four interviews comports with the finding that defendant Franco's statements were made voluntarily.  The tone and pace of all four interviews was calm and relaxed and the three voluntary interviews were punctuated with friendly banter.  Although defendant Franco begins to cry at one point in the post-arrest October 22 interview, the agents responded sensitively and appropriately, and did not take advantage of the situation.  This is consistent with Agent Ginn's sworn assertion that no law enforcement officer threatened defendant Franco (Ginn Decl. ¶ 3).  Defendant Franco's statements and his intonation in all of the interviews did not indicate he was frightened or that the officers were stating anything but the obvious to him.  And although defendant Franco alleges that he currently suffers from PTSD, dysthymic disorder (a depressive disorder), and borderline personality disorder, none of these alleged conditions have been shown to have had any bearing on his statements' voluntariness or his perception of what was going on during the interviews.  Defendant Franco's statements were plainly voluntary and his motion to suppress the statements is denied.

### 4.   MOTION *IN LIMINE* 7:  *CORPUS DELICTI*

Defendant Franco moves to exclude all evidence of certain crimes the government alleges he made statements about, arguing that the government will not be able to prove that the crimes actually occurred.  The motion is **DENIED**.

When the government seeks to rely on a defendant's confession or admission to meet its burden of proof, the *corpus delicti* doctrine requires the government to provide corroborative evidence that the criminal conduct actually occurred and that the confession/admission was trustworthy.  *See United States v. Lopez-Alvarez*, 970 F.2d 583, 592 (9th Cir. 1992).  The purpose of the *corpus delicti* doctrine is to guard against uncorroborated confessions or admissions serving as the sole basis for conviction of a criminal charge or proof of an essential element of the crime. As explained in *Opper v. United States*, 348 U.S. 84, 91 (1954), although the *corpus delicti* doctrine applies to admissions, it applies to those "statements of the accused out of court that show essential elements of the crime . . . necessary to supplement an *otherwise inadequate basis for a verdict of conviction*" (emphasis added).  The proceedings to date have made clear that a confession or admission by defendant Franco will not be the government's sole evidence of any of the essential elements of the crimes charged in Counts One, Two, Three, or Four.

In the event, however, that defendant Franco's statements or confessions are the *only* evidence the government puts forth to prove an essential element of Counts One, Two, Three, or Four, and the government fails to introduce any corroborative evidence for a statement or confession, defendant Franco may bring a *corpus delicti* motion after the presentation of evidence and the offending statement will be stricken and a proper jury instruction will be given.

### 5.     MOTION *IN LIMINE* 8:  TESTIMONY OF WALTER PALMA

Defendant Franco moves to exclude the testimony by government witness Walter Palma under Rule 403, arguing that his testimony will be unreliable and/or false and that any testimony by witness Palma has minimal probative value because it will only show that defendant Franco was working to undermine the conspiracy.  As stated at the pretrial conference, the motion is **DENIED**.  Defendant Franco has not demonstrated that witness Palma will falsely testify nor that his testimony should be wholly excluded.  Credibility is for the jury, not counsel, to decide.

### 6.     MOTION *IN LIMINE* 9:  *MASSIAH* INQUIRY

Defendant Franco moves for an inquiry into whether a *Massiah* violation occurred while he was housed with Jaime Martinez and Carlos Garrido at Marin County Jail and Walter Palma and Jose Alvarado at Glenn Dyer Jail.  The motion is **GRANTED IN PART**.  The government has

United States District Court

For the Northern District of California

asserted that the only statement that it is aware of made by defendant Franco to any of these cooperating witnesses after his indictment is a statement to Carlos Garrido that defendant Franco hoped Walter Palma would not cooperate against him about a particular shooting.  As stated at the pretrial conference, if the government wishes to use this statement at trial, witness Garrido will first be subject to *voir dire* outside the presence of the jury to determine whether the statement was elicited in violation of *Massiah*.  The admissibility of the statement will be determined after that *voir dire*.

### 7.   MOTION *IN LIMINE* 10:  GRUESOME PHOTOGRAPHS

Defendant Franco moves to exclude gruesome photographs of victims and crime scenes and evidence related to the effects of injuries suffered by victims (Dkt. No. 5436).  The motion is **DENIED WITHOUT PREJUDICE**.  The government will be required to present any such photographs or evidence outside of the presence of the jury for screening by the undersigned. Counsel may make more specific objections, if any, at that time.

### 8.   MOTION *IN LIMINE* 11:  JUDICIAL NOTICE OF ACOSTA CONVICTION

Defendant Franco moves for judicial notice of Roberto Claros Acosta's false statements conviction to impeach government cooperating witnesses by purportedly showing that cooperating witnesses are willing to lie to prosecutors and agents (Dkt. No. 5438).  The motion is **DENIED**.  The conviction will not be introduced as the probative value it carries with respect to this purpose is significantly outweighed by the risk that it will confuse the issues.  Although judicial notice of the conviction was taken in the April 2011 trial, the circumstances were different and Acosta's credibility was directly at issue in that trial due to the introduction of one of his excited utterances to Agent Moore.  If a circumstance arises in the instant trial where judicial notice of the conviction may be warranted, a request for judicial notice of the conviction may be renewed.

### 9.   MOTION *IN LIMINE* 12:  READING OF THE INDICTMENT

Defendant Franco seeks to strike unspecified language from the indictment as prejudicial surplusage (Dkt. No. 5439).  In the alternative, he seeks to preclude the indictment from being read to or given to the jury and requests the parties be directed to submit a short,

neutral statement of the case to be read to the jury in lieu of the indictment.  The motion is **GRANTED IN PART AND DENIED IN PART**.

The indictment does not contain prejudicial surplusage that must be stricken.  As the Advisory Committee Note to FRCrP 7 explains, the purpose of FRCrP 7(d) is to protect a defendant against "immature or irrelevant allegations in an indictment or information, which may . . . be prejudicial."  As previous orders denying motions to strike alleged surplusage in the indictment have found, the language of the indictment is not irrelevant or prejudicial.

In any event, the entirety of the indictment need not be read or given to the jurors, as it is a lengthy document and a number of counts are no longer at issue.  Instead, as discussed at the pretrial conference, an agreed-on statement of the case will be read to prospective jurors prior to *voir dire* and a summary of the counts at issue in the indictment will be given to the jury, once it is sworn.  Defense counsel and counsel for the government are to file a stipulation that includes proposed language for the statement of the case and the indictment summary by **WEDNESDAY, DECEMBER 28 AT NOON**.

### 10.    MOTION *IN LIMINE* 13:  STORAGE OF DISCOVERY IN COURTROOM

Defendant Franco moves for an order permitting his counsel to house one full copy of discovery necessary for the conduct of trial either in or near the trial courtroom (Dkt. No. 5440).  For good cause shown, the motion is **GRANTED**.  Counsel may store the necessary materials in the courtroom throughout the trial.  Counsel should keep in mind, however, that the courtroom is open to the public (and other matters will be heard when this case is not on trial) and should take the necessary precautions to ensure sensitive material is protected.  The Court and its staff will not be responsible for monitoring and/or securing materials left in the courtroom.

### 11.    MOTION *IN LIMINE* 14:  CIVILIAN CLOTHING AND SHACKLES

Defendant Franco moves to appear at trial in civilian clothing and without shackles (Dkt. No. 5441).  The motion is **GRANTED**.  Reasonably prior to the commencement of trial, counsel for defendant Franco must provide the USMS with the clothing defendant Franco wishes to wear during trial.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

### 12.    MOTION *IN LIMINE* 15: VOUCHING

Defendant Franco seeks an order precluding the government from vouching for the credibility of its cooperating witnesses (Dkt. No. 5442).[6]  The government responds that it understands it obligations and will not vouch for its cooperating witnesses.  The motion is accordingly **DENIED AS MOOT**.  All counsel, including defense counsel, will please remember their professional obligations in this regard.  The motion may be re-raised if any party believes improper vouching is occurring or is about to occur.

### 13.    MOTION *IN LIMINE* 16: OUT-OF-COURT STATEMENTS BY INFORMANTS

Defendant Franco seeks a ruling excluding testimony by government agents and law enforcement about any out-of-court statements made by unavailable government informants. The government has asserted that it will not seek to introduce this type of testimony. Accordingly, as stated at the pretrial conference, the motion is **GRANTED**.  The government may not introduce any such testimony unless it receives prior authorization from the undersigned.[7]

### 14.    MOTION *IN LIMINE* 17: UNDISCLOSED RULE 404(b) EVIDENCE

Defendant Franco moves to preclude all Rule 404(b) evidence, as the government has not noticed any Rule 404(b) evidence (Dkt. No. 5443).  Defendant Franco also moves to specifically exclude evidence of the alleged shooting of a Samoan man at the Double Rock housing projects.  As stated at the pretrial conference, the specific request to exclude the shooting incident is **DENIED**.  In the undersigned's view, the incident is inextricably intertwined with the charges in this case and is not Rule 404(b) evidence.  Nor is the incident inadmissible under Rule 403.

The motion is otherwise **DENIED WITHOUT PREJUDICE** to more specific challenges. The government has represented that it will not introduce Rule 404(b) evidence and will only seek to introduce direct proof of the crimes charged or evidence that is inextricably intertwined with the crimes charged.  If a dispute arises as to whether particular evidence is indeed direct

---

[6] A related motion by the government regarding cooperation agreements is addressed *infra* on page 16.

[7] As the government has asserted it does not intend to seek to introduce this type of testimony, this ruling also applies to the statement made by Roberto Claros Acosta to Agent Moore which was allowed into evidence during the April 2011 trial.

proof of the crimes charged or inextricably intertwined, defense counsel should bring the matter to the undersigned's attention.  At all events, the government should keep in mind that the deadline to notice Rule 404(b) evidence has passed and absent good cause for failure to disclose, no Rule 404(b) evidence will be permitted.

**15.    MOTION *IN LIMINE* 18:  LEADING QUESTIONS DURING DIRECT EXAMINATION**

Defendant Franco moves to be able to use leading questions during direct examination of the investigating agents, government informants, and cooperating witnesses he calls (Dkt. No. 5444).  As stated at the pretrial conference, the motion is **GRANTED IN PART**.  Counsel for defendant Franco may lead case agents or police officers that worked on the instant case in a significant way.  Otherwise, whether counsel may use leading questions on direct examination will be determined on a case-by-case basis and counsel should seek permission prior to leading any such witness.

**16.    MOTION *IN LIMINE* 19:  DISCLOSURE OF WITNESS IDENTITIES DURING TRIAL**

Defendant Franco seeks to hide from the public the identities of his trial witnesses and requests that his witnesses be given pseudonyms under which they may be permitted to testify.  As stated at the pretrial conference, the motion is **DENIED**.  The motion does not provide any specific basis that would justify such an extreme measure.  If any party believes the safety of a particular witness would be jeopardized if his/her identity was publicly disclosed, the matter must be brought to the undersigned's attention, along with points and authorities that would counsel in favor of the extreme measure of hiding the identity from the public.

**17.    MOTION *IN LIMINE* 20:  STATEMENTS OR ACTS OCCURRING BEFORE AGE 18**

Defendant Franco moves to exclude all statements and acts that occurred prior to September 15, 2003, the date defendant Franco turned 18 years old (Dkt. No. 5445).  As a first alternative, he seeks to exclude all evidence of firearm possession by him.  As a second alternative, he seeks the same limiting instruction that was given for pre-majority acts during the April 2011 trial.  The motion is **GRANTED IN PART**.  Where appropriate, if any evidence of pre-majority acts by defendant Franco or his coconspirators is introduced during the instant trial,

**United States District Court**
For the Northern District of California

1  *upon motion by defendant Franco*, the undersigned will give the same instruction regarding pre-

2  majority acts that was given during the April 2011 trial.

3        **18.**    **MOTION** *IN LIMINE* **21: TESTIMONY OF JOSE ESPINAL RE: FIREARMS**

4       Defendant Franco seeks to exclude testimony by Jose Espinal about obtaining firearms

5  from an apartment that defendant Franco was living in with Moris Flores (Dkt. No. 5446).  The

6  motion is **DENIED**.  The objection goes to the weight of the evidence, not its admissibility.  Jose

7  Espinal will testify that defendant Franco was present in the apartment when he obtained the

8  firearms and if defendant Franco wishes to argue he did not know that there were firearms in the

9  apartment, that Moris Flores invited others over to the apartment without his consent, or that he

10  did not know the firearm would ultimately be used in a shooting, he may make that argument to

11  the jury.

12        **19.**    **MOTION** *IN LIMINE* **22: LIMITING INSTRUCTION RE: COUNT FOUR**

13       Defendant Franco moves to exclude certain instances of firearms possession from the

14  jury's consideration of Count Four, arguing that these instances of firearms possession were not

15  included in the government's bills of particulars (Dkt. No. 5447).  The motion is **DENIED**.  The

16  purpose of the bills of particulars was to give the defense adequate notice of the charges so that

17  defense cases may be prepared accordingly.  Although the instances of firearms possession at

18  issue were not listed in the government's bills of particulars, evidence of the incidents was

19  presented in the prior trials and the instant motion evidences that defendant Franco knows of the

20  incidents and their attendant details.  There is accordingly no notice problem and the government

21  will not be precluded from presenting evidence of the incidents.

22       This ruling is without prejudice to motions to strike *other* instances of firearms

23  possession that were not included in the bills of particulars for which defendant Franco asserts

24  there was inadequate notice.

25        **20.**    **MOTION** *IN LIMINE* **23: REFERENCES TO CIVIL LAWSUIT**

26       Defendant Franco moves to exclude any reference to his civil lawsuit.  As stated during

27  the pretrial conference, the motion is **GRANTED WITHOUT PREJUDICE** to a future government

28

**United States District Court**
For the Northern District of California

1    request to reference the civil lawsuit.  The government may not reference the civil lawsuit absent

2    court clearance.

3        **21.**    **MOTION *IN LIMINE* 24:  MISDEMEANOR CONVICTION FOR IMPEACHMENT**

4        Defendant Franco moves to preclude impeachment by his prior misdemeanor conviction

5    for the unlawful taking of a vehicle and evasion of a police officer (Dkt. No. 5448).  The motion

6    is **DENIED AS MOOT** as the government has agreed that it will not use the conviction for

7    impeachment.  Defendant Franco's follow-on Rule 403 objection (raised in his reply brief) to

8    exclude the conviction and evidence of the *underlying* incident (which the government argues is

9    evidence of defendant Franco's association with Walter Palma) is **GRANTED IN PART**.  Although

10    the government may not reference the misdemeanor *conviction*, it may introduce evidence of the

11    underlying incident.

12        **22.**    **MOTION *IN LIMINE* 26:  BULLETS PROVIDED TO SERGEANT MOLINA**

13        Defendant Franco moves to preclude references to bullets defendant Franco allegedly

14    provided to SFPD Sergeant Mario Molina because the SFPD was unable to locate the bullets for

15    inspection by the defense (Dkt. No. 5450).  The motion is **DENIED AS MOOT**.  After the motion

16    was filed, the SFPD was able to locate the bullets and the government has made assurances that

17    the defense will be permitted to inspect the bullets.

18        **23.**    **MOTION *IN LIMINE* 27:  PROFFER STATEMENTS**

19        Defendant Franco moves to preclude the government from using his proffer statements

20    during trial (Dkt. No. 5466).  This motion is related to a government motion *in limine* which

21    seeks permission to use defendant Franco's proffer statements to cross-examine defendant

22    Franco if he testifies or to rebut evidence and/or arguments presented by defendant Franco.  As

23    stated at the pretrial conference, these motions are **DENIED WITHOUT PREJUDICE**.  The extent to

24    which defendant Franco's proffer statements may be used against him will depend on his

25    testimony (if any) and the arguments/evidence presented in his case-in-chief.  After defendant

26    Franco testifies (if he does testify) or after the close of defendant Franco's case-in-chief, the

27    government may re-raise its request to use the proffer statements.  The government may not,

28

however, use or reference defendant Franco's proffer statements in its case-in-chief or reference them in its opening statement.

Defendant Franco's argument that the government should be completely barred from using his proffer statements, irregardless of the contents of his testimony or the arguments and evidence presented during his case-in-chief, is rejected. *First*, defendant Franco has not made even a minimal showing that he was coerced into making involuntary statements during his proffer sessions. Defendant Franco was represented by his current counsel at each of these sessions and there is no evidence of coercion. *Second*, the government has not waived the proffer agreement by presenting the proffer statements to the Court in its pretrial motion to use the proffer statements. The plain language of the proffer agreement does not prohibit the government from using the statements in pretrial motions and there has been no waiver (Agreement ¶ 2).

### 24. MOTION *IN LIMINE* 28:  ADDITIONAL OBJECTIONS

Defendant Franco moves for permission to file additional objections and motions (Dkt. No. 5452). This motion is **GRANTED IN PART AND DENIED IN PART**. As additional disclosures are made, new evidence discovered, and as trial progresses, the parties will, of course, be able to bring additional motions and objections. There may be circumstances, however, where a motion or objection clearly should have been noticed for the pretrial conference or an even earlier date. As such, the moving party should be prepared to explain why any such motion should not be denied as untimely.

All trial motions, by the defense or the government, must be filed by **8 P.M.** if the moving party wishes for the motion to be heard the following morning. The opposing party need not file a written response but must be prepared to argue at 7:30 a.m. any motion filed by 8 p.m. the prior evening. In some instances, however, the Judge may set a briefing schedule and defer argument until after written submissions have been received and reviewed.

### GOVERNMENT MOTIONS *IN LIMINE*

The government moves for a number of *in limine* rulings, mostly regarding general conduct at trial (Dkt. Nos. 5454). With some exceptions, the government's motions and its

arguments in support were almost identical to its motions *in limine* for the April 4 and October 24 trial (Dkt. Nos. 3020, 5140).

### 1.     MOTION *IN LIMINE* A:  EXTRINSIC EVIDENCE FOR IMPEACHMENT

The government seeks to preclude the use of extrinsic evidence for impeachment.  The motion is **DENIED WITHOUT PREJUDICE** to specific challenges brought at the proper time at trial.

### 2.     MOTION *IN LIMINE* B:  EVIDENCE ALREADY IN THE RECORD

The government reminds the undersigned that under Rule 104(a) the undersigned "can and should" consider evidence already presented in prior proceedings to make preliminary factual determinations, particularly when determining the admissibility of coconspirator statements.  The motion is **GRANTED** insofar as the undersigned will consider the proceedings to date — including evidence presented during the April 4 and October 24 trials — in determining whether to admit coconspirator statements and in making other preliminary factual determinations.  The parties may not, however, point vaguely to "prior proceedings" but must specifically identify the evidence that is being relied upon.  The undersigned will not rely on *ex parte* submissions to determine whether foundation has been laid for any evidence.

### 3.     MOTION *IN LIMINE* C:  ADMISSION OF COOPERATION AGREEMENTS

The government seeks an order finding cooperation agreements relevant and admissible when the defense has attacked the credibility of a cooperating witness.  The government's motion is **GRANTED IN PART**.  The cooperation agreements — including the truthfulness provisions — will be admissible if the defense specifically attacks a witness' credibility because of his/her purported bias due to cooperation with the government.  As our court of appeals has explained, "vouching" concerns do not arise unless the prosecution refers to an agreement's requirement of truthfulness *before* the issue of bias is raised by the defense.  *United States v. Wallace*, 848 F.2d 1464, 1474 (9th Cir. 1988) ("References to truthfulness requirements in plea agreements do not constitute vouching when made in response to attacks on the witness's credibility because of the plea agreement") (citation omitted).  Accordingly, the government may introduce the cooperation agreements at any time — including during direct examination — if the defense has already attacked a witness's credibility due to cooperation.

United States District Court

For the Northern District of California

16

1    Before the government may introduce a cooperation agreement for a particular witness,

2    however, the government must first notify the defense so that there is sufficient opportunity for

3    objections to be made prior to the introduction of the cooperation agreement in the event that

4    there is a dispute as to whether the witness' credibility was attacked due to cooperation or in case

5    the defense wishes to request redactions to the agreement.

6    **4.    MOTION *IN LIMINE* D:  *HENTHORN* BASED QUESTIONS**

7    The government moves to require defense counsel to proffer the basis for any *Henthorn*

8    based questions prior to questioning a witness with such questions.  This motion is **GRANTED IN**

9    **PART**.  In order to ensure orderly trial proceedings, the procedure will be the same as prior trials

10   in this case.  All *Henthorn* issues must be vetted with the undersigned in advance of questioning

11   except where the question is regarding an express, sustained finding of untruthfulness, false

12   statement, or false report.  In those instances, no prior permission will be needed.  Where

13   possible, the *Henthorn* material should be brought to the undersigned's attention prior to the

14   commencement of cross-examination.  At all events, the government shall not tip the hand of

15   defense counsel to the officer that will be questioned.

16   **5.    MOTION *IN LIMINE* E:  PROFFER RE: AFFIRMATIVE DEFENSES**

17   The government seeks an order requiring defendant Franco to provide an evidentiary

18   basis for any affirmative defense of duress, entrapment, or public authority prior to being

19   permitted to present these defenses at trial.  As stated at the pretrial conference, the motion is

20   **DENIED**.  Defendant Franco has already submitted a brief regarding the evidentiary basis for his

21   entrapment and duress defenses and although the brief does not specifically address public

22   authority, the proceedings to date have made clear under what basis defendant Franco is

23   asserting a public authority defense.  Similarly, the government's request (raised in its reply

24   brief) that defendant Franco be precluded from presenting any affirmative defense is **DENIED**.

25   The government has not made a showing that defendant Franco should be completely precluded

26   from arguing and presenting the affirmative defenses of entrapment, duress, or public authority.

27   Of course, whether defendant Franco ultimately receives jury instructions on these defenses is a

28   separate issue that will be addressed at a later time.

**United States District Court**
For the Northern District of California

17

**United States District Court**
For the Northern District of California

### 6. MOTION *IN LIMINE* F: PROFFER RE: THIRD-PARTY CULPABILITY

The government seeks an order requiring defendant Franco to provide an evidentiary basis prior to being permitted to argue that a specific third party actually committed the crimes he is charged with. The motion is **DENIED WITHOUT PREJUDICE** to a more specific motion if it becomes apparent that defendant Franco is wasting time or confusing the issues by arguing that a particular person committed the crimes he is charged with.

### 7. MOTION *IN LIMINE* G: REFRESHING RECOLLECTION

The government seeks an order requiring the parties to properly refresh recollection. Of course, both sides must use the proper procedure to refresh recollection at trial. The parties shall not read out loud from a document in evidence and ask the witness whether his/her recollection is then refreshed. Instead, the witness must first state that he or she cannot remember something and that the item in question might refresh his or her memory. Then, the item may be given to the witness to read silently. The motion is accordingly **DENIED WITHOUT PREJUDICE** to specific motions brought when it appears a party is not complying with the proper procedure.

### 8. MOTION *IN LIMINE* H: IMPROPER SPEAKING OBJECTIONS

The government requests that the defense be precluded from making speaking objections with no proper purpose. The motion is **DENIED WITHOUT PREJUDICE** to specific motions brought if improper speaking objections are being made. The Court is confident that all counsel will conduct themselves professionally and appropriately at trial and will not improperly disrupt examinations.

### 9. MOTION *IN LIMINE* I: ARGUING NEGATIVE INFERENCES

The government seeks to preclude the defense from arguing that the jury cannot convict without a particular type of evidence. As is, the motion is insufficiently specific. There is no universal bar against defense comments regarding the government's failure to present witnesses or evidence, although in some instances certain arguments may be improper. The motion is **DENIED WITHOUT PREJUDICE** to re-raising with respect to specific instances.

United States District Court

For the Northern District of California

**10.**    **MOTION *IN LIMINE* J:  USE OF PROFFER STATEMENTS**

As discussed above with respect to defendant Franco's motion *in limine* 27, this motion is **DENIED WITHOUT PREJUDICE** to re-raising after defendant Franco testifies or after the close of defendant Franco's case-in-chief.

**11.**    **MOTION *IN LIMINE* K:  PROPOSED EXPERT DR. OFSHE**

The government moves to exclude the proposed testimony of Dr. Richard Ofshe, a sociologist and expert on "false confessions."  The motion is **GRANTED**.  Dr. Ofshe's testimony will be excluded in its entirety.[8]

Dr. Ofshe seeks to testify that:

> Mr. Franco's statements were the result of the use of psychologically coercive tactics by the police officers who interrogated him, that is they relied on the use of threats and promises of benefit to influence his decision making and to gain compliance.  He will analyze the techniques used including the police and agents [sic] use of formatted statements.  He will testify to his analysis of the relationship between the facts stated by Mr. Franco during his interrogations and the facts of the alleged crimes about which he speaks reveals that his statements are consistent with Franco's statements [sic] have been invented rather than being based on memories of these events.  The failure of a confession statement to "fit" the facts of a crime is indicia of an unreliable statement.

(Franco Expert Disclosures 000001).  This proposed expert opinion will not assist the trier of fact and should be excluded under Rule 702.  Rule 702 only allows expert opinion where "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue."  Fed. R. Evid. 702.  In other words, expert testimony is only appropriate where "untrained laymen" would be unable to intelligently determine the particular issue without the guidance of an expert.  FRE 702, advisory committee's note to 2000 amendments.  This is because the jury must serve as the fact finder in a criminal case — not an expert.  The purportedly "coercive" tactics at issue are verbal statements by law enforcement officers that defendant Franco asserts constituted coercive promises and threats.  An average layperson does not need the assistance of an expert to evaluate whether certain statements or words are

---

[8]  This order need not address whether Dr. Ofshe is qualified and whether his opinions are based on sufficient bases and a reliable methodology, as it is already being excluded on other grounds.

United States District Court

For the Northern District of California

1   threatening or coercive.  Just as Dr. Ofshe may have done (and as this Court did to rule on the

2   motion to exclude the statements), the jury can listen to the recordings of the statements and

3   assess for itself the circumstances under which the statements were made and whether the

4   resulting statements were false confessions or unreliable.

5          Dr. Ofshe's testimony must also be excluded under Rule 403.  The risk of unfair

6   prejudice, confusion of the issues, and waste of time significantly outweigh any probative value

7   of the proposed testimony.  For example, Dr. Ofshe seeks to compare the "facts of the alleged

8   crimes" to the statements defendant Franco made about those crimes to explain why defendant

9   Franco's statements were false or unreliable.  But the facts of the alleged crimes are for the jury

10  to decide.  It would be unfairly prejudicial for Dr. Ofshe to be permitted to opine as an expert on

11  the defense's view of how the alleged crimes were committed.  Similarly, although defense

12  counsel has argued that Dr. Ofshe will not comment on the credibility of any individual in the

13  case, it is inevitable that Dr. Ofshe will offer an opinion on at least defendant Franco's

14  credibility.  Dr. Ofshe's overarching opinion is that defendant Franco's statements to law

15  enforcement were false, due to their purportedly coercive techniques.  This is nothing more than

16  a conclusion about the credibility of defendant Franco's statements and would clearly usurp the

17  jury's function.

18         **12.      MOTION IN *LIMINE* (DKT. NO. 5477):  PROPOSED EXPERT DR. HOWSEPIAN**

19         The government seeks to exclude the testimony of Dr. Avak Albert Howsepian.  As

20  stated at the pretrial conference, the motion is **GRANTED IN PART**.

21         Dr. Howsepian may not testify to his "forensic opinions" that:  (1) defendant Franco

22  became involved with MS-13 "for motives involving protection, a sense of vulnerability, an

23  intolerance of aloneness, an extreme sensitivity to abandonment, and identity diffusion"; (2)

24  defendant Franco remained involved in MS-13 "because of his self-understanding concerning his

25  role as a law enforcement informant, in addition to issues related to abandonment and aloneness";

26  (3) defendant Franco has a "relatively low" predisposition for violence; and (4) defendant

27  Franco's decision to become an informant was "mediated by his diffuse sense of identity and

28  correlative vulnerability to be influenced," "strong drive to identify with his father and to preserve

**United States District Court**
For the Northern District of California

an idealized illusion of that relationship, his desire to 'undo' his past, and his extension of his then perceived career in law enforcement, for a future career in law enforcement." These opinions are nothing more than repetitions of hearsay from defendant Franco and carry minimal probative value to any issues in this case. Defendant Franco's alleged internal reasons for becoming and staying involved with MS-13 and becoming an informant do not constitute a cognizable defense. In stark contrast to the minimal probative value of the opinions, the opinions run a high risk of unfair prejudice, will confuse the issues, and will waste time.

Additionally, Dr. Howsepian's opinion about Dr. Franco's predisposition must also be excluded under Rule 704(b) because it directly speaks to whether defendant Franco could have had the requisite mental state for his entrapment defense (that he was not predisposed to commit acts of violence). Moreover, the opinion must be excluded under Rule 403 because the opinion itself acknowledges that it is an opinion on predisposition notwithstanding defendant Franco's "belonging to MS-13 and his tendency to act impulsively in some contexts." The opinion thus has minimal probative value because it excludes consideration of highly relevant material.

Dr. Howsepian's conclusion that defendant Franco does not have a conduct disorder and does not have antisocial personality disorder is also excluded under Rule 403. The fact that defendant Franco does *not* have certain disorders that carry certain behavioral characteristics is minimally probative. A person may engage in violent activity or conspire to do so even if he does not have a conduct disorder or antisocial personality disorder. These "non-diagnoses" are also inextricably intertwined with Dr. Howsepian's inadmissible and speculative conclusions about defendant Franco's feelings of remorse, his future risk of violence, and history of acting responsibility — conclusions that are nothing more than *ipse dixit* based on hearsay from defendant Franco and an absence of certain disorders.

Dr. Howsepian may, however, testify to his specific psychiatric diagnoses, namely that defendant Franco suffers from PTSD, dysthymic disorder, a mathematics learning disorder, and borderline personality disorder. Dr. Howsepian may also testify to the clinical symptoms normally associated with these disorders but must be careful to avoid opinion testimony that

United States District Court

For the Northern District of California

1   would violate Rule 704(b) and should steer clear of regurgitating the inadmissible hearsay bases

2   for his opinions without prior authorization from the Judge.

3          This order is without prejudice to the government's recently-filed motion to exclude Dr.

4   Howsepian's testimony due to his refusal to answer questions during his mental examination,

5   which will be heard on **THURSDAY, DECEMBER 22 AT 10 A.M.** (Dkt. Nos. 5563, 5564).

6

7          **IT IS SO ORDERED.**

8

9   Dated:  December 21, 2011.

10                                                   _____
                                                     WILLIAM ALSUP
                                                     UNITED STATES DISTRICT JUDGE