GERI LYNN GREEN (SBN 127709)
Law Offices of Geri Lynn Green, LC
155 Montgomery Street, Suite 901
San Francisco, CA 94104
Tel: (415) 982-2600
Fax: (415) 358-4562
greenlaw700@gmail.com

Attorney for Defendant
MANUEL FRANCO

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | **DEFENDANT FRANCO'S OPPOSITION TO THE GOVERNMENT'S MOTION TO QUASH  WITNESS SUBPOENAS** |
| v. | |
| MANUEL FRANCO, | Date:  January 4, 2011 |
| Defendant. | Time: 7:30 a.m. |
| | Dept:  Hon. William Alsup |

The Government moves to quash all but six of Defendant Manuel Franco's subpoenas to federal employee witnesses on the ground that the testimony sought is irrelevant to Mr. Franco's defense, and any relevant testimony would be cumulative.  The Government also prematurely contends that Mr. Franco failed to adequately summarize the testimony it seeks from each witness, in violation of 28 C.F.R. §§ 16.21-16.26, and 6 C.F.R. §§ 5.41-5.45 ("the *Touhy* regulations").

A.    **Quashing Subpoenas Based on Failure to Adhere to *Touhy* Regulations is Premature**

On December 28, 2011, mindful of the logistics of arranging witness testimony and in response to the Government's offer to accept service of federal witness subpoenas, Mr. Franco provided a copy of 28 subpoenas to be served on federal government employees in this case, along with a generalized summary of the testimony sought.  (Dkt. 5604, Ex. 1.)

On December 29, 2011, the Government objected to the adequacy of the defendant's summaries of the testimony sought from the federal government employees.  The Government's motion to quash comes just one day later, precluding any meaningful opportunity to address the Government's concerns

and ensuring expenditure of judicial resources.

On December 30, 2011, in accordance with 28 C.F.R. §§ 16.21-16.26, and 6 C.F.R. §§ 5.41-5.45, Mr. Franco initiated service of witness subpoenas to federal employees, accompanied by a summary of the specific testimony sought from each federal employee witness, to the appropriate federal agencies. A copy of each of these notices was electronically provided to the government on December 30, 2011.[1] Because there has been no opportunity for the originating agencies to receive this information, or to determine if the testimony sought covers classified material, the government's request to quash any federal witness subpoena on this ground is premature.

Although the Supreme Court has held that a government agency can require employees to secure approval of the agency head before responding to a subpoena (See *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467-68, 71 S. Ct. 416, 95 L. Ed. 417 (1951)), the Ninth Circuit has carved out an exception for criminal cases. See *United States v. Bahamonde*, 445 F.3d 1225 (9th Cir. Cal. 2006). The Circuit Court in *Bahamonde* reversed a defendant's conviction following the trial court's preclusion of a government agent's testimony based on the defense's failure to follow the Department of Homeland Security's *Touhy* regulation at 6 C.F.R. § 5.45(a), finding the regulation as applied in a criminal prosecution violated due process. *Id*. at 1229 ("It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.").

Accordingly, the Court should deny the Government's motion to quash, and refrain from precluding any federal employee testimony based on the Government's claim that Mr. Franco did not adequately summarized the testimony anticipated and sought from each witness.[2]

**B.  The Testimony Sought is Relevant**

The government generally contends that "most" of Mr. Franco's subpoenas are part of a fishing expedition seeking irrelevant testimony. See Dkt. 5604 p. 3:3-5. However, Mr. Franco is charged with three overarching conspiracies that encompass the acts of each of his alleged co-conspirators, spanning

---

[1] Mr. Franco did not serve the FBI with subpoenas for Agents Hammell and Jun on the Government's information that these agents are no longer associated with the FBI.

[2] Mr. Franco will provide the Court with an under seal copy of these notices at the Court's request.

over the course of many years.  Therefore, Mr. Franco is charged with being culpable for each and every act that the Government is able to prove against each and every member of the charged conspiracies. The memory, knowledge and observations of each of the investigating agents regarding the acts of Mr. Franco's alleged co-conspirators and the acts of Mr. Franco are thus highly relevant, as the testimony of each agent subpoenaed will have the tendency to make Mr. Franco's agreement to participate in the charged conspiracies more or less probable.  See F.R.E. Rule 401.  Any investigating or supervisory agent's *lack of knowledge* about Mr. Franco is also highly relevant, as is testimony that shows a lack of involvement by Mr. Franco.

Further, the manner in which these agents handled the informants in this case illustrates what an informant could reasonably believe he or she was authorized to do.  Because the Court has denied Mr. Franco a police practices expert to provide an opinion to assist the jury in determining what an informant would have reasonably believed, a factor critical to establishing the defense of public authority, the testimony of these federal agents is relevant to establishing the reasonableness of Franco's belief.

## C.  The Testimony Sought is Not Cumulative

### 1.  The FBI Agents

The Government contends that the FBI agents who directly participated in debriefing, authorizing, re-authorizing, and directing Mr. Franco, including supervisory agents Ford and Butler, and field agents Posusney, Chow, Klinke, Pascua, Poling, Dobberstein, Lascalzco, Martinez, Forst and Jenkins, would only provide cumulative testimony to that of agents Flores, Karch, Wickman and Parnell, while reserving the right to quash the subpoenas to those four agents as well.  Dkt. 5604 p. 4:23-24, fn 3, p.5:1-2.  This broad contention ignores the issues germane to this case and to the defense.

Mr. Franco has asserted a defense of public authority; specifically, Mr. Franco has asserted that he was in fact acting with public authority and/or that he reasonably believed he was doing so, and that the government agents fostered this belief.  To rebut this, the Government must prove beyond a reasonable doubt Franco did not have a reasonable belief he was acting as an authorized government agent to assist law enforcement at the time of the offenses charged in the indictment.  *See United States v. Davis*, 76 F.3d 311, 314 (9th Cir.1996); *United States v. Mason*, 902 F.2d 1434, 1440–41 (9th Cir.1990).

Accordingly, each of these FBI agents participated in key interactions with Mr. Franco which

formulate the basis for his defense of public authority.  The role that each of these agents played and the interactions they had with him are unique, highly relevant, and cannot be conveyed to the jury through another agent, regardless of whether that other agent played a more central role in handling Mr. Franco.

Further, the manner in which these agents handled both Mr. Franco and the other informants in this case illustrate what an informant would reasonably believe he or she was authorized to do.  In other words, testimony as to each time an agent received information that an informant was engaged in activity and did or did not act to terminate, admonish, investigate and/or prosecute the activity establishes that informant's understanding of what conduct was publicly authorized.  Because the Court has denied Mr. Franco a police practices expert to provide an opinion to the jury to assist in determining what an informant would reasonably believe he or she was authorized to do, testimony regarding the experiences and practices of federal agents handling informants in this investigation are an essential method for Mr. Franco to establish the reasonableness of his belief that he was acting with public authority.

While the Government may desire to lessen its burden of refuting the reasonableness of Mr. Franco's belief that he was acting with public authority by limiting the jury's exposure to the numerous FBI agents that fostered his belief, this is not a valid basis to quash a subpoena.

In arguing that the testimony of the subpoenaed FBI agents would be cumulative, the Government focuses on the interactions of three field agents with Mr. Franco.  The Government concedes that Agents Dobberstein and Klinke recall participating in official debriefings with Mr. Franco, that Agent Posusney recalled hearing of Mr. Franco, and that Agent Carter were present for meetings with Mr. Franco.  The Government's own discovery illustrates the following: Agent Carter participated in four debriefings with Mr. Franco and co-authored and validated the resulting FBI reports; Agent Posusney participated in three debriefings of Mr. Franco and co-authored the resulting FBI reports, and acted as the primary handler for FBI informant Jackie Orozco while participating in more than 20 debriefings of Ms. Orozco and FBI informant Carlos Carranza; and Agents Klinke and Dobberstein each participated in, and verified the resulting FBI report, of at least one debriefing of Mr. Franco.  The Government then attempts to situate Agent Poling differently, stating that she "never worked any MS case herself."  Dkt. 5604 p. 6.  The irrelevance of this unverified contention notwithstanding, the Government's own discovery reveals that Agent Poling was one of the two field agents that conducted the debriefing of Mr. Franco on April 08, 2006, following the events which form the basis for one of the overt acts presently charged against Mr.

Franco in the Third Superseding Indictment.  Agent Poling observed and verified the information

provided by Mr. Franco, and witnessed the existence of the body wire which recorded the publicly

authorized conduct that the Government inexplicably contends was committed by Mr. Franco in

furtherance of the charged conspiracies.

While the Government's motion does not address any specific concerns related to the other field

agents, the evidence is undisputed that Mr. Franco had official interaction acting as an authorized

confidential source with each of the FBI field agents subpoenaed.[3]  Accordingly, the knowledge, memory

and perception of every interaction between each FBI agent and Mr. Franco go directly to the issue of

whether Mr. Franco's belief that he was acting with public authority was a reasonable one.  Far from

being cumulative, the testimony of each and every agent who met with, debriefed, or provided

information, payment, direction or positive/negative feedback to Mr. Franco has a direct and meaningful

impact on his belief that he was acting as he was authorized to act, and is necessary to disprove that he

was in agreement with his co-defendants.

The government's characterization of Mr. Franco's subpoena to Special Agent in Charge Ford as

"particularly pointless" is without justification.  Special Agent Ford personally coordinated the

authorization of Mr. Franco as a Confidential Informant with the United States Attorney's Office in

February of 2006.  Under the Attorney General's Guidelines Regarding the Use of Confidential

Informants ("AG Guidelines"), Special Agent Ford played a critical step in assessing Mr. Franco's

suitability as an informant and, along with Supervising Agent Butler, essentially vouched for Mr. Franco

based on the representations of the field agents under his command.  This testimony cannot be conveyed

to the jury through four field agents of the Government's choosing—all of whom played an entirely

different role in the handling of Mr. Franco and all of whom have personal knowledge of different

relevant information.  Therefore, the testimony of supervising agents Ford and Butler would not be

cumulative, and is highly relevant to establishing whether or not Mr. Franco was conspiring with his co-

defendants or reasonably believed he was acting with public authority.

Further, the AG Guidelines require that FBI agents work in concert to validate, authorize, and

document the investigation into the continuing suitability of confidential informants.  For instance, prior

---

[3]  If Language Specialist Martinez is not considered a field agent, he nonetheless participated in two debriefings
with Mr. Franco.

1    to opening an informant, one agent and at least one witness must convey and document the appropriate

2    instructions, and then convey this material to a supervising agent.  Every investigative report that resulted

3    from a debriefing of Mr. Franco, as well as the other FBI informants, contains the names of the agents

4    who conducted the debriefing, and reflect the names of the agents who authored the summary, each of

5    whom signed off on the validity of the report.  Receipts of payment similarly indicate a witness to the

6    transaction.  The FBI itself requires corroboration of an agent's impressions and summary of these

7    critical investigative functions, and in order to validate or re-authorize a confidential informant the FBI

8    requires supervisory approval and assessment.[4]

9        The testimony of each of these agents is therefore relevant and necessary to Franco's defense, and is

10   not cumulative simply because Mr. Franco interfaced with a large number of agents.

11

12                    2.   The ICE Agents

13       The Government also moves to quash the subpoenas of ICE Agents Merendino, Red, Barry, Franco,

14   Masalski and Hardman.  In support, the Government makes the general contention that Mr. Franco is

15   engaging in a fishing expedition by seeking the testimony of these ICE agents, and asserts that because

16   Agent Merendino is currently in Jamaica and Agent Masalski is currently in Venezuela, requiring their

17   testimony "just to see if they have relevant information is a waste of time."  Dkt. 5604 p. 3-4.  The

18   Government requests that this Court preclude the testimony of these two agents because any relevant

19   information they could testify to would be cumulative of the testimony of ICE Agents Ginn and Horton.

20       Mr. Franco stands charged with three conspiracies, and could be held culpable for each act of his

21   alleged co-conspirators committed in furtherance thereof.  Therefore the knowledge and memory of *each*

22   of these agents, who were present for debriefings of informants in this case, who investigated MS-13,

23   who conducted surveillance on MS-13 members, and who participated in assessments that led to the

24   authorization or deactivation of informants, and who participated in the execution search warrants,

25   cannot be considered cumulative.  After all, each of these agents would testify to a specific period of time

26   [4]  Notably, as recently as December 30, 2011, the Government disclosed for the first time critical FBI materials,
     previously ordered to be disclosed by this Court, which are directly related to Mr. Franco's authorization as a
27   confidential informant for the FBI.  As such, it is now apparent that additional supervising agents personally
     participated with agents Ford and Butler in the authorization, re-authorization, and assessments of Mr. Franco, as
28   well as the supervision of the agents that were directly handling him.  When the defense has completed the
     assessment of these materials, they may subpoena additional witnesses.

and specific events in which they were involved during an investigation that lasted more than three years. Mr. Franco is not subpoenaing multiple witnesses to a single event who would be testifying to the same story, thereby wasting judicial resources. These subpoenas seek the testimony of trained investigative agents who have pieced together the evidence over many years and many cities. Each ICE agent played a unique role in this investigation.

Agent Merendino was the lead case agent for Operation Devil Horns, the investigation which resulted in the charges filed against Mr. Franco. Agent Merendino was present during countless debriefings of the two ICE informants, who provided extensive information as to the activities of MS-13, and also testified against Mr. Franco's co-defendants. Additionally, Agent Merendino was personally present when Mr. Franco was extensively debriefed on September 30, 2005, as well as when he was interviewed prior to his arrest on September 26, 2008. Mr. Franco has alleged that his relationship with the government stemmed from the September 2005 debriefing, and that his pre-arrest statements to law enforcement were the product of coercion. As an active participant in these critical events, Agent Merendino's unique memory and knowledge is highly relevant. The Government's argument that Agent Horton could testify as to events that occurred before he replaced Agent Merendino as the case agent on Operation Devil Horns, and as to which he has no personal knowledge, is therefore not reasonable.

Agent Masalski was also a primary case agent for Operation Devil Horns. According to Agent Merendino's testimony in a previous trial, Agent Masalski had a unique relationship as the primary contact with one of the two main ICE informants, Roberto Acosta, who provided a vast amount of intelligence to ICE. During the time that Agent Masalski was the agent who communicated directly with Mr. Acosta, the informant was deactivated, deported, and then reactivated. Further, Agent Masalski received information from ICE's other informant, Jaime Martinez, that Mr. Franco was suspected of cooperating with law enforcement by members of the 20th Street Clique. Agent Masalski further learned from Mr. Martinez that MS-13 members were planning on killing Mr. Franco as a result of this suspicion. Agent Masalski's testimony goes directly to the existence of an agreement between Mr. Franco and his alleged co-conspirators, and to the reasonableness of Franco's belief he was acting with public authority. His unique testimony would not be cumulative to that of any other ICE agent.

Supervising Agent Hardman approved countless Reports of Investigation ("ROIs") summarizing the work of the ICE field agents and the information provided to them by informants. In addition, Agent

Hardman participated directly in over 50 debriefings of these informants, conducted surveillance on MS-13 activities, and provided specific direction to ICE informant Roberto Acosta regarding what types of activities were acceptable for an informant within MS-13.  Thus, Agent Hardman has a unique perspective as a supervisor and from being in the field, and can testify to information that was generated about Mr. Franco and his alleged co-conspirators.

Agent Barry participated in debriefings and consensually monitored calls with ICE informants, and conducted surveillance on another FBI informant in this case who was operating at the same time as Mr. Franco.  Agent Barry participated in obtaining and executing search warrants on Mr. Franco and his alleged co-conspirators, and personally debriefed ICE informant Roberto Acosta on August 01, 2008 regarding the Ivan Miranda shooting, a shooting about which the defense anticipates the Government will introduce evidence at trial. Agent Barry's knowledge, memory and perceptions are thus necessary for Mr. Franco to establish what was or was not reported about Mr. Franco and his alleged co-conspirators.

Agent Red was also an investigating agent in Operation Devil Horns who conducted debriefings of the ICE informants.  Further, Agent Red secured and executed search warrants of MS-13 members' homes and participated in the investigation and arrest of Abraham Martinez and Walter Palma, who are alleged co-conspirators and cooperating witnesses against Mr. Franco.  Agent Red was also provided specific information about Mr. Franco from Mr. Acosta in 2008.  Further, his testimony is critical to establishing the actions taken and the results of the investigation into any and all information received about the activities of MS-13 members and of Mr. Franco himself.

Agent Rocio Franco participated directly in debriefings with ICE informants, and testified she was an 'alternate agent' for Agent Merendino, a lead agent in this case.  Agent Franco continued working on Operation Devil Horns after Merendino's transfer.  Agent Franco was assigned to provide protective services to Mr. Franco's family following his arrest.  Further, she acted as an interpreter during debriefings with ICE informants, and thus has a unique perspective that is both relevant and not cumulative of the testimony of any other agents in this case.

As part of his defense, Mr. Franco must show that he did not agree to participate in the charged conspiracies during all of the relevant time period.  Therefore, each and every federal agent that was actively investigating MS-13 cliques in the San Francisco Bay Area has knowledge and memory, or a lack of thereof, necessary to Mr. Franco's defense.  Mr. Franco must also establish that his belief that he

was acting with public authority was reasonable, and he must do this without the assistance of a police practices expert.  Mr. Franco must therefore rely on the how each federal agent responded when they received information about each informant's activities, including how the supervisor of that agent responded or expected them to respond, in order to establish what an informant in Mr. Franco's position would have reasonably believed was the scope of his public authority.

Therefore, the Government's motion to quash the FBI and ICE witness subpoenas based on the argument that the testimony is cumulative should be denied.

### D.  Undue Hardship

The present location of the investigative agents necessary for Mr. Franco's defense should not be a deciding factor in whether to quash the subpoenas at issue.  Mr. Franco faces trial more than three years after his arrest, following two necessary severances.  During the course of Operation Devil Horns and the parallel FBI and SFPD investigations, Mr. Franco was interviewed by over 23 government agents in over 70 debriefings.  Although Franco was officially an FBI and SFPD informant, there is extensive testimony at the previous trials that the three law enforcement agencies shared information and cooperated with each other as part of their investigations into the same gang in the same geographic area.  Establishing whether or not Mr. Franco entered into any conspiracy with his co-defendants is the critical issue in this trial, and each of the subpoenaed agents holds key pieces to the overall picture.

Mr. Franco has only subpoenaed agents who have information critical to his defense.  He has not sought cumulative or needless testimony that would equate to any undue burden on the agencies that put together this multi-year international investigation, and have since transferred key investigating agents.

Conclusion

Based on the above, the Government's motion to quash the defendant's subpoenas should be denied.

Respectfully Submitted,

DATED: January 03, 2011          LAW OFFICES OF GERI LYNN GREEN LC

                                      By: __/s/_____
                                        GERI LYNN GREEN
                                        Attorney for Defendant
                                        MANUEL FRANCO