GERI LYNN GREEN (SBN 127709)
Law Offices of Geri Lynn Green LC
155 Montgomery Street Suite 901
San Francisco CA 94104
Tel: (415) 982-2600
Fax: (415) 358-4562
greenlaw700@gmail.com
gerilynngreen@gmail.com

Attorney for Defendant
MANUEL FRANCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES of AMERICA, | Case No. 08-0730-WHA |
| Plaintiff, | **DEFENDANT MANUEL FRANCO'S TRIAL MEMORANDUM REGARDING THE NECESSARY SCOPE OF HIS CROSS-EXAMINATION OF FBI SPECIAL AGENT SANDRA FLORES AND OFFER OF PROOF** |
| v. | |
| MANUEL FRANCO, | |
| Defendant. | Judge: Hon. William H. Alsup |

## I. INTRODUCTION

Defendant Manuel Franco hereby submits this memorandum regarding the necessary scope of his cross-examination of FBI Special Agent Sandra Flores. On January 13, 2012, the Court expressed concern regarding the probative value of additional testimony from Ms. Flores regarding the extent of Mr. Franco's work as an informant for the FBI, and indicated that Mr. Franco's cross-examination may be limited. For the reasons stated below, Mr. Franco's should be permitted to elicit testimony regarding each and every time he provided or attempted to provide information or services to law enforcement against the very persons he allegedly conspired with, as such evidence is critical to his primary defense—sufficiency of evidence and reasonable doubt.

Because the Government is not required to show that Mr. Franco committed any overt act in furtherance of the charged conspiracies, the primary issue in this case is Mr. Franco's mental state—i.e., whether the Government can prove beyond a reasonable doubt that Mr. Franco agreed with others to

commit the underlying RICO and VICAR offenses. The method by which both the Government and the defense will seek to establish Mr. Franco's state of mind is through objective evidence of his actions manifesting his agreement or lack of agreement in the charged conspiracies. Thus, it is critical that the jury be permitted to hear *all* of the objective evidence from which reasonable inferences regarding Mr. Franco's mental state can be drawn to determine, after weighing all the evidence, whether the Government has proven beyond a reasonable doubt that Mr. Franco actually agreed with others to commit the underlying offenses. The Government intends to prove the essential element of Mr. Franco's agreement through evidence tending to show that he committed certain criminal acts, which are only relevant to this case as manifestations of Mr. Franco's criminal intent. Thus, Mr. Franco must also be permitted to introduce the same type of objective evidence manifesting his lack of criminal intent— namely, the numerous times where he provided or attempted to provide information or services to assist law enforcement to undermine the charged conspiracies—so that the jury can weigh all of the evidence in deciding whether the Government has met its burden.

  Still, the Court is correct to question the line of questioning pursued by Mr. Franco at this point in the Government's case-in-chief, as it is arguably premature. In fact, after six days of testimony, the Government has introduced almost no evidence tending to show that Mr. Franco ever had the required state of mind to be convicted of the charged conspiracies. By putting the cart before the horse by choosing to call Mr. Franco's law enforcement handlers before attempting to establish that Mr. Franco agreed with others to commit the underlying RICO and VICAR offenses—apparently putting on an anticipated defense rebuttal case before completing its case-in-chief— makes it imperative for Mr. Franco to attempt to elicit testimony from Ms. Flores to establish that he did not actually agree to join the charged conspiracies in order to avoid further confusion for the jury

  The illogical order of the Government's evidence has effectively shifted the burden of proof. By calling Mr. Franco's handlers before attempting to prove that Mr. Franco had the required state of mind to be convicted, the Government has forced Mr. Franco to elicit testimony tending to disprove an essential element of the Government's case before they have even attempted to meet their burden with respect to that element.

## II. ARGUMENT

### A. Order of Proof - Jury Confusion

As the Court recognized, the jury is likely to be confused as to the relevance of testimony regarding each and every time that Mr. Franco provided information or services to law enforcement against his alleged co-conspirators at this stage of the Government's case-in-chief. However, the reason that such testimony will be confusing is not because the evidence is irrelevant to Mr. Franco's defense that he never developed the requisite mental state to join the conspiracy, but the evidence is being presented in such an illogical order, that the testimony that Mr. Franco seeks to elicit from Ms. Flores is being offered to rebut evidence that the Government has not yet introduced - any evidence that Mr. Franco may have harbored the requisite intent.

The following example is illustrative. The Government has stated that it intends to elicit testimony from cooperating witness Walter Palma, a/k/a "Kapone," that Mr. Franco drove Mr. Palma on two occasions when Mr. Palma attempted to murder multiple rival gang members during the time period when Mr. Franco was indisputably working as an informant. As this is neither an assault, nor homicide case, the only relevance of this testimony is as evidence of alleged conduct by Mr. Franco manifesting his mental state and agreement in the charged conspiracies. Thus, evidence showing that Mr. Franco reported on Mr. Palma to the FBI more than 85 times—including shootings by Mr. Palma, (most likely these very shootings) information regarding the guns he possessed and the vehicles he drove, as well as his phone numbers and addresses—is highly probative to establish that Mr. Franco was not in fact conspiring with Mr. Palma. The jury could reasonably disbelieve Mr. Palma's testimony based on the weight of this objective evidence manifesting Mr. Franco's lack of agreement to conspire with him, and find incredible the Government's position that Mr. Franco was committing conspiratorial acts with the very person he was simultaneously trying to put behind bars.

While this evidence is critical to Mr. Franco's defense, its probative force will be severely blunted because of the Government's unusual order of proof - not to mention the Court's most accurate assessment that the evidence does not appear at this point to be relevant -- because there has been no evidence of Mr. Franco's criminal mental state requiring rebuttal.

Mr. Franco can only elicit testimony regarding his reporting on Mr. Palma through his law enforcement handlers. By choosing to call those witnesses before calling Mr. Palma, the Government

has ensured that the jury will be utterly confused as to the relevance of the testimony that Mr. Franco intends to elicit from Ms. Flores regarding the information he provided to her about Mr. Palma.

Mr. Franco understands that the Government has the discretion to put on its case-in-chief as it sees fit. However, the Government's unusual tactic of attempting to rebut an anticipated public authority defense prior to putting on evidence to establish the essential elements of the charged offenses raises constitutional concerns unless Mr. Franco is permitted to postpone his cross-examination of Ms. Flores or to recall her during his case-in-chief. The Due Process Clause of the Fifth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Yet if Mr. Franco is required to elicit testimony from Ms. Flores to disprove that he had the required mental state to be convicted *before* the Government has put on evidence to establish Mr. Franco's criminal intent, it would effectively shift the burden of proof to the defense. Further, because the primary objective evidence manifesting Mr. Franco's lack of agreement in the charged conspiracies is the information and services he provided to law enforcement, Mr. Franco will be forced to assist the Government in establishing the existence of the charged conspiracies by eliciting testimony regarding the conspiratorial acts of others that he reported to the FBI, thereby lessening the Government's burden of proof.

### B. The Scope of Mr. Franco's Cross-Examination of Sandra Flores

Whenever the cross-examination of Ms. Flores resumes, Mr. Franco should be permitted to elicit testimony regarding each and every time he provided or attempted to provide information or services to law enforcement against the very persons he allegedly conspired with. Mr. Franco understands that the Court is concerned that this would become unduly cumulative, and has suggested that Mr. Franco focus the remainder of his cross-examination on what he could have reasonably believed he was publicly authorized to do. Yet although there has been much argument and briefing regarding the likely public authority defense, Mr. Franco respectfully notes that we are still in the Government's case-in-chief, and it remains to be seen whether it will be necessary for him to put on any defense, beyond holding the Government to its burden of proof. While it may be the case that Mr. Franco will assert one or more affirmative defenses, the Government as yet has introduced almost no evidence going towards one of the essential elements it must prove beyond a reasonable doubt—whether Mr. Franco agreed with others to commit the underlying RICO and VICAR offenses. Ms. Flores is a critical witness whose testimony will

cast doubt on the evidence that the Government intends to use to prove up that essential element.

The method by which both the Government and the defense will seek to establish Mr. Franco's state of mind is through objective evidence of his conduct that manifests either his agreement or lack of agreement in the charged conspiracies. The jury must be permitted to hear *all* of the objective evidence from which reasonable inferences regarding Mr. Franco's mental state can be drawn to determine whether the Government has proven beyond a reasonable doubt that Mr. Franco actually agreed with others to commit the underlying offenses. Mr. Franco understands that the Government intends to establish the essential element of his agreement through evidence tending to show that Mr. Franco committed certain criminal acts—specifically, statements by Mr. Franco regarding shootings that the Government cannot confirm ever happened, testimony of cooperating witnesses that they received some assistance from Mr. Franco when those cooperating witnesses attempted to murder rival gang members, and evidence that Mr. Franco picked up gang members in Oakland several hours after they killed Armando Estrada in San Francisco. Putting to one side whether the jury will believe that these crimes occurred and/or that Mr. Franco participated in them, it is important to remember that they are *only* relevant to this prosecution to the extent that the jury reasonably infers from them that Mr. Franco agreed to participate in the charged conspiracies.

Yet this theory of relevance cannot only benefit the Government. For exactly the same reason, Mr. Franco must be permitted to introduce evidence—including by eliciting testimony from Ms. Flores—as to each and every time he provided information or services to assist law enforcement agents in their investigation of the very persons he allegedly conspired with. Separate and apart from their relevance to any potential affirmative defense, these actions, in substance, regularity, timeliness, and quantity, taken by Mr. Franco *against* his alleged co-conspirators are objective evidence manifesting his lack of conspiratorial intent. Evidence of these actions is just as probative as evidence that the Government seeks to introduce regarding Mr. Franco's alleged criminal activity—if not more so, for the evidence of Mr. Franco's work as an informant is more trustworthy than his alleged uncorroborated statements and the testimony of cooperating witnesses—as the jury could reasonably infer from this evidence that Mr. Franco did not actually agree to participate in the charged conspiracies. It is the duty of the trier of fact to weigh all of the evidence that goes to Mr. Franco's state of mind to determine whether the Government has met its burden of proof, but to do this the jury must be permitted consider all of the

evidence of Mr. Franco's actions from which reasonable inferences about his mental state can be drawn.

If the Government is permitted to introduce evidence of Mr. Franco's statements of purported criminal acts as objective evidence manifesting his criminal intent, to wit: his agreement to join the charged conspiracies, Mr. Franco must also be permitted to introduce evidence of each and every time he contacted law enforcement to report information about or provide services against his alleged co-conspirators. This is a mental state crime. The only issue for the trier of fact to decide is whether Mr. Franco harbored the requisite criminal intent. The quantity as well as the quality of his reports of the criminal activities of the very conspiracy he is charged with being part of is relevant to any trier of fact's determination as to his mental state on any given day.

While the Government may claim that the quantity of the evidence of Mr. Franco's work as an informant should be limited, the mere fact that there is a large amount of objective evidence that tends to show that Mr. Franco did not agree with others to commit the underlying RICO and VICAR offenses does not make such evidence cumulative. The quantitative scope of Mr. Franco's government involvement is significant in and of itself. It is not as if this evidence is merely relevant to show that Mr. Franco was a reliable informant for the FBI. Rather each incident where Mr. Franco provided or attempted to provide information or services to law enforcement against his alleged co-conspirators is probative of his lack of criminal intent at that time. The Government is attempting to prove that Mr. Franco agreed to participate in the charged conspiracies, notwithstanding his work as an informant, primarily through evidence tending to show that at particular times during ongoing conspiracies, he committed certain crimes. To rebut this evidence, Mr. Franco must be permitted to introduce evidence of the times when his conduct, as documented by the FBI, tended to show that he did not actually agree to be part of those conspiracies.

It may be the case that, regardless of the number of times that Mr. Franco manifested his intent to undermine the conspiracy by working with law enforcement, the jury will determine that Mr. Franco committed crimes, and that this criminal activity established, beyond a reasonable doubt, that he agreed with others to commit the underlying RICO and VICAR offenses. Alternatively, the jury may find that Mr. Franco committed certain acts, but not to further the enterprise or the conspiracy. The jury may find that Mr. Franco was never in the charged enterprise or conspiracies, or that he withdrew, or that he joined up in the end. But the jury must be given the opportunity to weigh the evidence before it can come to its

conclusion, and it is a manifestly inadequate substitute to merely tell the jury in general terms about Mr. Franco's work as an informant.

Furthermore, evidence of specific recordings and reports manifest not only Mr. Franco's intent by the fact that the transactions, or conversations, or actions occurred, the substance of certain reports and recordings manifest his distinct intent to bring the gang down. An intent at odds with the charges here.

### C. The Offer of Proof

See Attached Offer of Proof.

## III. CONCLUSION

For the foregoing reasons, Mr. Franco respectfully requests that the Court allow him the opportunity to present the reports and recordings of Mr. Franco's work for the government in order to prove his lack of criminal intent to join the charged RICO or VICARs, an essential element in the charged offenses. In addition, the Court may consider the possibility of postponing the defendant's cross-examination of Ms. Flores until after the Government has introduced sufficient evidence to permit the reasonable inference that Mr. Franco actually agreed to join the charged conspiracies, and that once the cross-examination of Ms. Flores resumes, he be permitted to elicit testimony regarding each and every time he provided or attempted to provide information or services to law enforcement against the very people he allegedly conspired with.

Respectfully submitted,

DATED: January 15, 2012

LAW OFFICES OF GERI LYNN GREEN, LC

By:_____/s/_____
    GERI LYNN GREEN
    Attorney for Defendant
    MANUEL FRANCO