1
2
3
4
5
6              IN THE UNITED STATES DISTRICT COURT
7
8           FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10   UNITED STATES OF AMERICA,                No. CR 08-0730 WHA
11              Plaintiff,
12      v.                                    **MEMORANDUM OPINION RE
                                              DENIAL OF REQUESTS FOR
13   MANUEL FRANCO,                           ENTRAPMENT, DURESS, AND
                                              JUSTIFICATION INSTRUCTIONS**
14              Defendant.
15   _____/

16                        **INTRODUCTION**

17        Defendant Manuel Franco requested that the jury be given Ninth Circuit Model Criminal

18   Jury Instructions 6.2 (entrapment), 6.5 (duress), and 6.7 (justification) (Dkt. Nos. 5722, 5739).

19   These requests were denied.  This memorandum opinion explains why the requested

20   instructions were not given.

21                         **STATEMENT**

22        Prior to trial, defendant Manuel Franco filed notice that he intended to seek a duress

23   and entrapment instruction (Dkt. No. 5055).  Later, defendant Franco also indicated an intent to

24   present a public authority defense (Dkt. No. 5497 at 6).  Although the government sought to

25   preclude defendant Franco from presenting these defenses at trial, the undersigned declined to

26   rule out the defenses before trial, instead waiting to see how the evidence came out at trial

27   (Dkt. No. 5565).  This was necessitated in part by defendant Franco's objection to having to

28   litigate the issue fully before the presentation of his case-in-chief (Dec. 14 Tr. 119–25).

United States District Court
For the Northern District of California

1       Throughout trial, the public authority defense continued to be the subject of discussion by

2 the parties (Jan. 6 Tr. 495–501; Jan. 9 Tr. 706–07; Dkt. Nos. 5630, 5631).  Defendant Franco,

3 however, did not indicate he still wished to pursue a duress or entrapment defense until the

4 morning of the first scheduled charging conference (Dkt. Nos. 5699 at 2, 5722).  Defendant

5 Franco later also requested an instruction on justification — a defense he had not previously

6 indicated he would pursue (Dkt. No. 5739).

7       After the close of defendant Franco's case-in-chief, the parties submitted on the issue of

8 affirmative defenses.  The undersigned ruled that a public authority instruction would be given

9 but duress, entrapment, and justification instructions would not be given (Feb. 2 Tr. 3444–63;

10 Feb. 3 Tr. 3587–88).

11                              **ANALYSIS**

12       "A defendant is entitled to instructions relating to a defense theory for which there is

13 any foundation in the evidence, even though the evidence may be weak, insufficient,

14 inconsistent, or of doubtful credibility."  *United States v. Burt*, 410 F.2d 1100, 1103 (9th Cir.

15 2005) (citation omitted).  Nonetheless, "a mere scintilla of evidence supporting a defendant's

16 theory" is insufficient to warrant a defense instruction.  *Ibid*.  Even viewing the evidence in the

17 best light for defendant Franco, there is insufficient evidence to support giving his requested

18 instructions on duress, justification, and entrapment.

19      **1.**    **DURESS**

20       A defendant acted under duress at the time of the crime charged when:  (1) there was

21 an immediate threat of death or serious bodily injury to the defendant or his family member

22 if the defendant did not commit or participate in the commission of the crime; (2) the

23 defendant had a well-grounded fear that the threat of death or serious bodily injury would be

24 carried out; and (3) the defendant had no reasonable opportunity to escape the threatened

25 harm.  *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008).  No evidence

26 was presented to support the first or last elements of the duress defense and accordingly no

27 duress instruction was warranted.

28

United States District Court

For the Northern District of California

1

### A.      Immediate Threat of Death or Serious Bodily Injury

Our court of appeals has explained that an "immediate" threat is one where "the defendant's persecutors figuratively held a gun to his head (or to his family's heads) compelling the defendant to commit the illegal action." *Vasquez-Landaver*, 527 F.3d at 802.  Our court of appeals has also explained that "vague threats of possible future harm" are insufficient.  *United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir. 1983).  To be immediate, the threat must be specific.  *United States v. Kuok*, __ F.3d __, 2012 WL 118571 at *14 (9th Cir. 2012).  No evidence presented at trial met this immediacy requirement.

While generic evidence was presented that defendant Franco was "greenlighted" at least at one point in time because he was suspected of working with law enforcement, there was no evidence that he was threatened directly or told that he had to take certain actions to prevent harm to himself or his family.  Similarly, although evidence was presented that cooperators/informants (if they were discovered) and those who defected from MS-13 were generally at risk of retaliation by MS-13, there was no evidence of specific threats of death or serious bodily injury to defendant Franco or his family members due to his perceived cooperation or plans to leave the gang.  This is unlike those instances where our court of appeals has found a threat to be sufficiently immediate.  For example, in *Kuok*, the defendant was presented with information that his family was being tracked closely for years (e.g. he was provided with reports detailing his wife's comings-and-goings and photographs of his family in public) and was specifically told that if he did not commit the charged crimes, his wife would be arrested and held in a jail where the Chinese government sends people to "take [them] off the grid."  *Kuok*, 2012 WL 118571, at *2–3, 14–15.  Even then, our court of appeals deemed the issue of whether a duress instruction should be given to be a "close" case.  In stark contrast, in our case, no evidence was presented that defendant Franco committed the charged crimes or took any particular action in response to any threat, let alone a specific threat.

The most specific "threat" presented at trial was a statement by defendant Franco's common-law wife Sabrina Avalos after the murder of Armando Estrada.  Avalos told defendant

Franco that he should go to pick up the perpetrators of the murder, as Moris Flores had asked, or else defendant Franco would be "beaten up."[1]  The statement, however, was cautionary rather than threatening, did not indicate defendant Franco or his family was at risk of immediate death or serious bodily injury, and was simply speculation by Avalos.  Moreover, there is no indication that defendant Franco was compelled to act by Avalos' statement.  As defendant Franco described during his voluntary interview on September 18, 2008:

> So yeah, Moris was calling me, c'mon man, you ain't gonna do me no [unintelligible] you ain't gonna do no favors for the hood man.  That's fucked up man [unintelligible].  *And my girl told me y'know, you'll get beaten if you don't do it.  I was like, fuck it, I'm not going to do it, I'll get beaten up* [unintelligible].

(Exh. 1608) (emphasis added).  Defendant Franco also elaborated that no such threats had been made before that day — July 11, 2008:

> GINN:      You said earlier that you didn't want to go pick them up, but
>            your girl said something about you better do it or you are going
>            to get hurt?
> FRANCO:    Yeah, it took some time but —
> GINN:      Getting hurt by who?
> FRANCO:    MS.
> GINN:      MS.  Has that ever happened to you before where like your girl
>            said hey, you better do this or you might get hurt?
> FRANCO:    No, [sic] protective.  She was really nervous because Moris was
>            calling and calling.

(Exh. 1608).  The vague "warning" by Avalos — who was concerned about defendant Franco's well-being — did not constitute a specific, immediate threat of death or serious bodily injury that compelled him to act.

Notably, Avalos' generalized apprehension was not supported by the communications defendant Franco had with Flores regarding his request for defendant Franco to pick up the perpetrators of the Estrada homicide.  Although defendant Franco recounted to law enforcement that Flores called him repeatedly, none of defendant Franco's numerous descriptions of the calls indicated any threat of death or serious bodily injury was made or insinuated.  During his voluntary interview on September 18, 2008, defendant Franco described Flores' request as follows:

---

[1] Sabrina Avalos was also referred to as Sabrina Manzanares.

4

United States District Court

For the Northern District of California

| | | |
|---|---|---|
| GINN: | What did Slow [Flores] tell you?  On that day when he called you and he wanted you to pick those guys up, what did he specifically say to you? | |
| FRANCO: | Hey, go pick them up.  I was like where?  To Oakland.  I was like, that's far I got things to do.  It was like man, you got to do this, it's for the barrio, you've got to do it. | |
| GINN: | Why were you nervous about doing it?  What did he tell you about what they had done? | |
| FRANCO: | I didn't know what was going on.  I was like getting my life straight and then I was like man, [unintelligible] because I don't want to be caught up in nothing. | |
| GINN: | But if you are just going to pick up three guys, how would that screw up your life? | |
| FRANCO: | Like I told him I didn't want to do it and then he called me again and was like hey, go pick them up. | |

(Exh. 1608).  There was no mention of a threat by Flores and defendant Franco did not express that he took anything Flores said to be a veiled threat.  During his voluntary interview with law enforcement on September 26, 2008, and during his post-arrest interview on October 22, 2008, the conversation was similarly described.  Exh. 1609 ("He [Flores] said to go pick up Sparky and just Sparky.  He didn't tell me the plan.  And [unitelligible], go help him out.  I was like okay . . ."); Exh. 1629 (" . . . I called him back and it was like hey man, you have to go get Sparky.  He just told me you have to go get Sparky in Oakland.  And I was like why man, and he was like just do it and don't ask questions.  I was like okay.  And then I was like, alright I was going to do it . . .").  And a text message sent to defendant Franco by Flores requesting defendant Franco's assistance also was devoid of any threats.  Exh. 985TT ("Call Sparky, go pick them up, they need a ride, *please* dude") (emphasis added).  There was no evidence that supported defendant Franco's contention at trial that he picked up the Estrada homicide perpetrators as a result of threats from MS-13 or Flores.

## B.     Reasonable Opportunity to Escape

There was also no evidence presented that defendant Franco did not have a reasonable opportunity to escape.

*First*, while defendant Franco may have had difficulty contacting Agent Flores at one point in time, this difficulty did not bar him from attempting to contact any other law enforcement officer or agency — including the local police.

5

*Second,* unlike the defendants in *Kuok* and *Contento-Pachon*, defendant Franco did not present any evidence that it would have been futile to seek aid from law enforcement because law enforcement was corrupt or in league with those who were threatening him.  Indeed, defendant Franco voluntarily met with different government agents from the SFPD, ICE, and the FBI on numerous occasions but never expressed any desire for assistance.  This was despite the fact that various government agents expressed that they were available to help defendant Franco if he believed he or his family was in danger or later became in danger.  (*See, e.g.,* Exhs. 1608, 1609).  Indeed, defendant Franco even rebuffed a specific offer of relocation (*see, e.g.,* Jan. 25 Tr. 2807–10, 2885, 2889).

Finally, defendant Franco's vague assertion that there was no reasonable opportunity to escape because MS-13 had an extensive reach is insufficient.  If a defendant could satisfy the "no escape" element of the duress defense on this generalized ground, then all members of gangs with widespread influence could bypass this element without any further inquiry.

### 2.    JUSTIFICATION

For similar reasons that the duress defense was rejected, the justification defense was rejected.  A defendant's conduct is justified if at the time of the crime charged, the defendant was:  (1) under an unlawful and present threat of death or serious bodily injury; (2) did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) had no reasonable legal alternative; and (4) there was a direct causal relationship between the conduct and avoidance of the threatened harm.  *United States v. Gomez*, 92 F.3d 770, 775 (9th Cir. 1996).  As discussed previously, however, there was no evidence of any specific threats that directly caused defendant Franco to commit the charged crimes or any other acts.  Where a defendant fails to present evidence of a specific threat or a specific instance when he was threatened, the justification defense is unavailable as a matter of law.  *United States v. Wofford*, 122 F.3d 787, 790 (9th Cir. 1997).  There must be "specific evidence of very recent threats that had not yet abated" and "the bald assertion that [the defendant] was threatened throughout the relevant period is not enough."  *Ibid.*

6

United States District Court

For the Northern District of California

1    There is also no evidence that defendant Franco lacked a legal alternative.  The fear of

2    being branded a "snitch" does not excuse a defendant from first seeking assistance from law

3    enforcement unless it would have been futile or impossible to do so.  *Id*. at 791.  As discussed

4    previously, there was no evidence presented that it would have been futile or impossible for

5    defendant Franco to seek the assistance of law enforcement.

6    Contrary to his assertion, defendant Franco was not similarly situated to the defendant in

7    *Gomez*.  Not only did the defendant in *Gomez* receive specific death threats — including a

8    threat personally-delivered by a man brandishing a gun — the defendant in *Gomez* sought a

9    wide array of legal alternatives before engaging in the charged criminal conduct.  *Gomez*, 92

10    F.3d at 773.  The defendant sought help from federal agents, the local county sheriff's office,

11    his parole agent, Catholic and Episcopal churches, and even a local newspaper.  After those

12    resources proved fruitless, the defendant stayed at friends' houses, lived on the street, walked at

13    night and rode on buses, and falsely told a parole officer he was using illegal drugs so he could

14    see his parole agent — all to avoid being attacked.  Only after the defendant received *more*

15    death threats after he was sent back to jail did he commit the charged crime (possession of a

16    firearm).  This is completely inapposite to the facts of our case.

17       **3.    ENTRAPMENT**

18    For a defendant to have the issue of entrapment submitted to the jury, there must be

19    some evidence showing that the defendant:  (1) was predisposed to commit the crime before

20    being contacted by government agents; and (2) was not induced by the government agents to

21    commit the crime.  *United States v. Becerra*, 992 F.2d 960, 963 (9th Cir. 1993).  Although

22    evidence supporting the instruction may be weak, insufficient, inconsistent, or of doubtful

23    credibility, defendant Franco did not even met this threshold.

24    No evidence of inducement was presented at trial.  Although defendant Franco worked

25    as a government informant for the SFPD and the FBI, there was no evidence that any

26    government agent embedded him in MS-13, induced him to conspire to conduct or participate in

27    the conduct of the affairs of MS-13, induced him to conspire to commit murder or assault with a

28

United States District Court

For the Northern District of California

1   dangerous weapon in furtherance of racketeering, or induced him to possess firearms *in*

2   *furtherance* of the charged conspiracies.  While defendant Franco was authorized to serve as a

3   "listening post" — he was not charged with mere presence during gang activity.  He was

4   charged with actively conspiring and participating in unauthorized criminal activity.  There was

5   no indication that the government agents took any action to induce him to conspire to further

6   the goals of MS-13.

7        It bears noting that defendant Franco did not request an entrapment by estoppel

8   instruction.  At the final charging conference, defense counsel stated that she was "thinking

9   about" submitting an entrapment by estoppel instruction, but ultimately did not request the

10   instruction, submit a proposed instruction, or specify what factual basis existed in the record to

11   support such an instruction (Jan. 2 Tr. 3462–63).  In any event, the trial record did not support

12   the giving of an entrapment by estoppel instruction.  The entrapment by estoppel instruction is

13   "available only when [the] defendant can demonstrate a reasonable belief that his conduct was

14   sanctioned by the government."  *United States v. Schafer*, 625 F.3d 629, 637 (9th Cir. 2010).

15   There was no evidence that defendant Franco had a reasonable belief that the charged conduct

16   was sanctioned by the FBI, the SFPD, or any other government entity.

**CONCLUSION**

18        Defendant Franco failed to establish any factual basis warranting his requested

19   instructions on duress, justification, and entrapment.  As such, the instructions were not given.

22   Dated:  February 16, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE