IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MANUEL FRANCO,<br><br>Defendant.<br>　　　　　　　　　　　　　　　　　／ | No. CR 08-0730 WHA<br><br>**ORDER DENYING DEFENDANT MANUEL FRANCO'S POST-TRIAL MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL** |

**INTRODUCTION**

After a jury convicted him of conspiracy to commit assault with a dangerous weapon in aid of racketeering, defendant Manuel Franco moves for a judgment of acquittal pursuant to FRCrP 29 (Dkt. No. 5831). In the alternative, he moves for a new trial pursuant to FRCrP 33. For the following reasons, the motion is **DENIED**.

**STATEMENT**

In October 2008, defendant Manuel Franco was indicted for one count of racketeering conspiracy in violation of 18 U.S.C. 1962(d) (Count One), one count of conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(5) (Count Two), one count of conspiracy to commit assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. 1959(a)(6) (Count Three), and one count of use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. 924(c) (Count Four).

Defendant Franco was the last defendant in the above-captioned matter to proceed to trial. Seven of defendant Franco's codefendants facing racketeering charges commenced trial in April 2011 and two of defendant Franco's codefendants facing racketeering charges commenced trial in October 2011. Defendant Franco was originally scheduled to proceed to trial in September 2010 but after five continuances of his trial date, he proceeded to trial in January 2012.

After a month-long trial and seven days of deliberation, the jury found defendant Franco guilty of Count Three but acquitted him of Counts One, Two, and Four. Very shortly after the verdict, the Court reminded counsel that the statutory maximum term of imprisonment for Count Three was three years and requested any requests for immediate release or early sentencing to be promptly made (*see, e.g.* Dkt. No. 5797).

Fourteen days after the verdict, defendant Franco filed the instant motion (Dkt. No. 5831). One week later — the date the government's response to the original motion was due — defendant Franco filed an "amended" motion (Dkt. No. 5835). The government filed its response the next day (Dkt. No. 5836).[1]

**ANALYSIS**

Under FRCrP 29, a judgement of acquittal is required when the evidence presented at trial is insufficient to sustain a conviction beyond a reasonable doubt. A judgment of acquittal is improper if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Rizk*, 660 F.3d 1125, 1134 (9th Cir. 2011). In making this determination, the trial judge is to view the evidence in the light most favorable to the prosecution.

FRCrP 33(a) provides that a trial judge may vacate a judgment and grant a new trial if the interest of justice so requires. The decision to grant a new trial lies within the trial judge's discretion and is reviewed for abuse of discretion. *United States v. Rush*, 749 F.2d 1369, 1371

---

[1] Defendant Franco's request that the government's response brief be stricken is **DENIED** (Dkt. No. 5837). Although the government's response was filed one day after the deadline for a response to defendant Franco's *original* motion, the filing of defendant Franco's amended motion *seven days* after the deadline for any FRCrP 29 or FRCrP 33 motions excuses the government's one-day late filing.

2

(9th Cir. 1984). For such motions, the trial judge weighs the evidence and evaluates the credibility of the witnesses — the evidence need not be viewed in the light most favorable to the verdict. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). A motion for a new trial, however, should only be granted in "exceptional" circumstances where the "evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice may have occurred . . .". *United States v. Alston*, 974 F.2d 1206, 1211–12 (9th Cir. 1992) (citations omitted); *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 821 (9th Cir. 1985).

Defendant Franco raises a number of grounds that he asserts warrant a new trial. Each of his arguments is addressed in turn below.

### 1. SUFFICIENCY OF THE EVIDENCE

Defendant Franco first alleges that there was insufficient evidence to sustain the Count Three conviction against him and therefore his conviction must be set aside. As the undersigned has previously ruled, the evidence presented by the government at trial was more than sufficient for a rational trier of fact to find beyond a reasonable doubt that defendant Franco had committed each essential element of Count Three (Jan 25. Tr. 2746; Dkt. Nos. 5723, 2737).

Now, considering all evidence presented at trial, defendant Franco's renewed motion for a judgment of acquittal is again rejected. More than sufficient evidence was presented at trial that supported the jury's finding beyond a reasonable doubt that: (1) the charged racketeering enterprise existed; (2) defendant Franco specifically intended to agree and actually did agree with others to intentionally commit assault with a dangerous weapon; and (3) defendant Franco's purpose in conspiring to commit assault with a dangerous weapon was to maintain and further his position in the charged racketeering enterprise. The government presented ample evidence that MS-13 members knew, understood, and agreed that they and their fellow gang members were required to participate in violent assaults with dangerous weapons — including knives and firearms (*see, e.g.,* Tr. 889, 894–96, 979–80, 1851–52, 1883–84, 2145, 2201–02; Exh. 1607). This evidence included testimony regarding MS-13's rules and general practices as well as specific incidents of gang-motivated stabbings,

3

1  shootings, and homicides perpetrated by MS-13 members both before and after defendant
2  Franco was an informant (*see, e.g.,* Tr. 1854–57,1865–75, 1883–84, 2181–82; Exhs. 1608,
3  1609, 1629).

4        The government also introduced significant evidence that defendant Franco himself
5  specifically intended to agree and did agree to join and participate in the conspiracy. Multiple
6  witnesses identified defendant Franco as a jumped-in member of MS-13 who identified
7  himself to others as a member of the 20th Street Clique (*see, e.g,* Tr. 956–58, 1241, 2153;
8  Exhs. 1607, 1608).[2] Defendant Franco also further acknowledged to law enforcement that he
9  did not work as an informant the whole time he was in the 20th Street Clique and noted that
10 he had "joined MS again" after he had previously been an informant (Exhs. 1607, 1608). The
11 government also introduced abundant evidence that defendant Franco *knew* that the gang was
12 engaging in violent acts but remained in the gang and did not report any of the violent acts to
13 the authorities and himself participated in a number of "hunts" and shootings in furtherance of
14 the conspiracy (*see, e.g.,* Tr. 1005–06, 1867–77, 2141, 2152–57, 2161–71, 2202–08, 2437–38,
15 2474–80, 3081, 3083–83, 3092, 3520–28, 3560–63; Exhs. 1608, 1609, 1629). Defendant
16 Franco was also shown to have personally possessed dangerous weapons in relation to his
17 gang membership — a large knife with his gang moniker etched into it was found at his
18 residence, he was arrested for possession of brass knuckles, and he admitted to law
19 enforcement that he had been "the gun man" for the 20th Street Clique (Exhs. 1513, 1608,
20 1609; Tr. 1230, 2043–45). Defendant Franco also went so far as to initiate others into the
21 gang when he was no longer an informant (Tr. 1849–50).

22       Although defendant Franco offers alternative explanations for the evidence that the
23 government presented at trial — the jury already considered these alternative explanations
24 and rejected them when it convicted him of Count Three. There is no reason to second guess
25 the jury's determination, as the government presented sufficient evidence from which a guilty

---

[2] Evidence at trial demonstrated that defendant Franco had a tattoo of three dots — a symbol of MS-13 gang membership — even though gang tattoos were not mandatory (Tr. 903, 974–75, 977, 2713–14; Exh. 1632).

4

verdict could reasonably be sustained. *See generally United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992).

Defendant Franco's argument that no evidence of firearms possession may be considered in determining whether there was sufficient evidence presented at trial to support his conviction is also rejected. The fact that the jury acquitted defendant Franco of the substantive charge of firearms possession (Count Four) does not mean that the jury "made a factual finding that during the time that Mr. Franco was a member of the conspiracy to commit assault with a dangerous weapon in aid of racketeering, possessing firearms did not fall within the scope of the illegal agreement, and it was not reasonably foreseeable that any member of the conspiracy would possess a firearm in furtherance of that conspiracy," as defendant Franco argues. Count Three was a conspiracy charge. Count Four was not. It is not a necessary implication from the jury's verdict that it found no firearms possession ever occurred or was conspired to. For example, the jury may have found that the evidence at trial established beyond a reasonable doubt that the conspiracy defendant Franco agreed to contemplated the possession and/or use of firearms — but the jury may have been unable to unanimously agree beyond a reasonable doubt on a specific instance of *possession or use* of a firearm— which was required to convict on Count Four. And while defendant Franco claims he is not asserting that there is any inconsistency in the verdicts for Counts Three and Four, it bears noting that if there is any inconsistency it is impossible to tell which verdict is the "correct" verdict. Defendant Franco argues that a necessary implication of his acquittal on Count Four is that the jury improperly convicted him of Count Three because it must have determined that no firearms possession had occurred. But it is equally likely that the jury determined that firearms possession had occurred and the acquittal of defendant Franco for Count Four was improper — not his conviction for Count Three. There is no way to tell. In such instances, the verdict must stand. *See, e.g., United States v. Powell*, 469 U.S. 57, 65 (1984). In any event, even without the firearms possession evidence, sufficient evidence was presented to convict defendant Franco of Count Three and no judgment of acquittal is warranted.

5

Similarly, no new trial is warranted. The evidence presented by the government was more than sufficient to support the verdict and the government's witnesses were credible in their testimony. Defendant Franco does not provide a legitimate basis for his request that the undersigned entirely discredit the testimony of witnesses Walter Palma and Jose Espinal. The fact that witness Palma had admitted he felt "betrayed" by defendant Franco at one point in time does not *ipse dixit* prove witness Palma's testimony was false. The undersigned judge was present for the testimony of witness Palma and finds that a jury could reasonably find his testimony credible. The same was true of witness Espinal. Defendant Franco's insinuation that AUSA William Frentzen "coached" witness Espinal to say things he did not have personal knowledge of is unsupported by the record. While defense counsel attempted on cross-examination to make witness Espinal admit that he had testified to things that he did not "remember prior to Mr. Frentzen telling you about it," witness Espinal never adopted this statement (Tr. 1928). Witness Espinal explained that AUSA Frentzen had reminded him of certain events and conversations — that witness Espinal had personal knowledge of — that he wanted witness Espinal to cover at trial. An attorney reminding a witness that the witness is being called to testify about certain particular events that the witness has independent knowledge of is not improper. This is distinctly different than an attorney improperly telling a witness to testify about things of which the witness does not have independent knowledge.

### 2. CONSTRUCTIVE AMENDMENT OF THE INDICTMENT

Defendant Franco also alleges that there were constructive amendments of the indictment warranting a new trial. Constructive amendment of an indictment occurs when the "complex of facts presented at trial" are "distinctly different from those set forth in the charging instrument" or when "the crime charged in the indictment was substantially altered at trial." *United States v. Bingham*, 653 F.3d 983, 993 (9th Cir. 2011) (internal quotation marks and citation omitted). There was no constructive amendment of the indictment and no new trial is justified.

*First*, there was no constructive amendment with respect to the charged enterprise in Count Three. The third superseding indictment charged defendant Franco with conspiracy to

1  commit assault with a dangerous weapon in order to maintain or increase his position within
2  the racketeering enterprise MS-13 and the evidence at trial directly supported and
3  substantiated the indictment's description of the charged enterprise. Specifically, evidence at
4  trial established that MS-13 was a national and international organization that was organized
5  into "cliques" — smaller groups operating in specific cities or regions — such as the 20th
6  Street clique (Dkt. No. 658 at ¶ 8; Tr. 877–89). Evidence at trial also substantiated the
7  indictment's description that the cliques "operated under the umbrella rules of MS-13" and
8  that "above the 'shot callers' [leaders of local cliques] are MS-13 leaders, often referred to as
9  'big homies' . . . who convey their orders, through, among other means, the use of telephones
10 that are brought into prisons" (Dkt. No. 658 at ¶ 10; Tr. 878–89, 881–82, 898; 979–73, 1046,
11 2320–22).[3] The fact that witness Abraham Martinez testified that at times the 20th Street
12 clique "wasn't that organized" before 2001 and "didn't really enforce as much of the rules
13 later on" does not contradict the indictment, and as witness Martinez's testimony explained,
14 the clique nonetheless still held meetings and carried out "work" during that time (violence)
15 (Tr. 1032, 1090). The government's case presented regarding the charged enterprise was
16 consistent with the indictment and did not present an entirely different complex of facts than
17 that presented to the grand jury. At all events, the government was not required to show that
18 MS-13 had a particular structure to prove up its case. *See United States v. Bingham*, 653 F.3d
19 983, 992–93 (9th Cir. 2011).

20 *Second*, no constructive amendment was caused because the government did not
21 present evidence at trial regarding five specific overt acts listed in the indictment. As an
22 initial matter, the overt acts listed in the indictment were overt acts that the grand jury found
23 were committed as part of the RICO conspiracy charged in Count One (for which there was
24 no overt act requirement), not overt acts with respect to the *conspiracy to commit assault with*

---

[3] Although defendant Franco alleges that the indictment described MS-13 as having a "specific top-down organizational structure with the 'shot callers' or leaders of local cliques receiving orders directly from a core leadership group that ran the overall MS-13 organization," the indictment does not go this far in describing the enterprise's hierarchy (Br. 9). While the indictment describes the cliques as operating under "umbrella rules" and notes that "big homies" would convey their orders to "shot callers" in certain ways, the indictment does not allege that the clique was run in a specific top-down fashion where a core leadership group in El Salvador made "the ultimate decisions" in the clique. *Compare* Dkt. No. 658 at ¶ 10 *with* Br. 9–10.

7

*a dangerous weapon* charged in Count Three. In any event, there were 120 overt acts listed in the indictment. As defendant Franco himself acknowledges, the government was not required to prove that defendant Franco committed any overt act in furtherance of the Count Three conspiracy, so long as it was proven that one of his coconspirators did (Br. 11). Although defendant Franco was only specifically named in five overt acts in the indictment, the conspiracy to which he was convicted of agreeing to committed numerous violent overt acts (such as the Armando Estrada homicide) — and those overt acts were both included in the indictment and presented at trial. Contrary to defendant Franco's assertion, the government never argued that the only evidence of defendant Franco's participation in the Count Three conspiracy were the five overt acts that specifically mentioned his name in Count One. Defendant Franco again confuses the nature of the Count Three charge against him. The count was a *conspiracy* count. It was not required that the government prove that defendant Franco himself committed any of the overt acts listed and defendant Franco presented no evidence that would even tend to show that he was publicly authorized to conspire to commit assault with a dangerous weapon. The government was not required to prove up each of the 120 overt acts included in the indictment, nor the five specific overt acts that defendant Franco was specifically named in. The complex of facts presented at trial was not different from those in the indictment.

### 3. EXCLUSION OF EVIDENCE

Defendant Franco also argues that he is entitled to a new trial because of certain evidentiary rulings during trial. The evidentiary rulings objected to were not erroneous and the undersigned rejects the argument that the interests of justice require a new trial wherein defendant Franco would be allowed to present the excluded evidence.

*First*, the letter from FBI Agent Bryan Smith to AUSA Wilson Leung — dated March 26, 2010 — was properly excluded from evidence (Exh. 3018). Contrary to defendant Franco's assertion, the letter was *not* excluded "*solely* on the Government's assertion that FBI Special Agent Regina Coffee could testify if called as a witness that she was tasked with summarizing Mr. Franco's authorized activities, and that the statement in the letter was based

8

on a misreading of a FBI 302 report . . . " (Br. 12) (emphasis added). In addition to the fact that the letter itself and prior testimony made clear that the letter contained a clerical error, the letter was inadmissible — it was drafted by an agent who had no personal knowledge of the scope of defendant Franco's authorization and was no more than hearsay. The letter was also irrelevant to defendant Franco's public authority defense as it was drafted well after defendant Franco was indicted and years after he was deactivated. The letter could not bear upon defendant Franco's belief about the scope of his authorization *when he was an informant* since the letter was drafted years later by someone who had not interacted with defendant Franco. Moreover, the government agreed that it would not argue that defendant Franco should be held liable for any of the charges because of his attendance at the September 2005 meeting — and followed through with this promise — rendering whether defendant Franco had *retroactive* authorization to attend the meeting a non-issue (Tr. 2126).[4] The jury was even specifically given a mere presence instruction (Dkt. No. 5773 at 12) (". . . a person does not become a co-conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists or merely being present at the scene of a transaction or event related to the conspiracy. The person must be a participant and not merely a knowing spectator.") The jury would not have come to a different verdict had it known that defendant Franco was authorized to attend the meeting. Introduction of the letter into evidence would have only resulted in a confusing side-show regarding why the letter was drafted (it was drafted to provide to Magistrate Judge Ryu for defendant Franco's bail hearing) and why the government contended it was erroneous (Tr. 2124). As the letter had no probative value relevant to the instant case, the letter was properly excluded.

*Second*, the preclusion of defense questioning regarding *alleged* misconduct by other informants (including non-FBI informants) was not erroneous. As the undersigned previously explained, *alleged* misconduct by other informants is irrelevant to what a reasonable person in defendant Franco's position would have believed was within the scope of his authorization.

---

[4] Defendant Franco's contention that his attendance at the September 2005 meeting was the "only specific evidence [besides his tape-recorded admissions] tying Mr. Franco to the 20th Street Clique prior to his becoming an informant" is unsupported by the record (*see, e.g.,* Tr.1241, 1294, 1300–02).

9

1  There was no indication that defendant Franco knew who the other informants were and thus
2  there is no way that defendant Franco would have been influenced by those informants'
3  misconduct (if any) and the way the misconduct was responded to by those informants'
4  handlers.  Trotting out allegations of misconduct by other informants unrelated to defendant
5  Franco and how those informants were handled would not shed light on what a reasonable
6  person in *defendant Franco's* position would have believed he was authorized to do.  The
7  lines of questioning sought by defense counsel were too attenuated to any relevant issue in the
8  instant case and were at best fishing expeditions.  Even now, defendant Franco cannot name
9  any specific instances of misconduct by other informants that were not treated properly by any
10 of defendant Franco's handlers, or by any agents.  For example, the only example raised by
11 defendant Franco is that Agent Sandra Flores previously learned that another informant,
12 Carlos Carranza, had been *arrested* for possession of a firearm, but Agent Flores continued to
13 use him as an informant (July 5 Tr. 12276–77).  But this does not bear on defendant Franco's
14 public authority defense — it does not shed light on how *defendant Franco* was handled and it
15 did not even suggest *Mr. Carranza* would have reasonably believed he was publicly
16 authorized to possess firearms.  As Agent Flores further testified, she continued using Mr.
17 Carranza as an informant because she learned that Mr. Carranza had *not* possessed a firearm
18 — he had entered a vehicle (while under surveillance) that had a firearm in it (*id*. at 12277).
19         Likewise, the fact that defendant Franco was not allowed to present testimony from a
20 "FBI informant practices" expert does not mean that defendant Franco was somehow then
21 entitled to shepherd in irrelevant testimony regarding other informants.  It was up to the jury
22 to determine whether a reasonable person in defendant Franco's position would have believed
23 he was publicly authorized to conspire to commit assault with a dangerous weapon.  An
24 expert's opinion about this ultimate question would have usurped the jury's function and
25 defendant Franco did not present any other cognizable basis for allowing the expert testimony.
26 Similarly, for reasons detailed in the February 3 order, the 301-page September 2005 OIG
27 report based on data *predating defendant Franco's activation as an informant* was excluded
28 from evidence under Rule 403 (Dkt. No. 5757).  No new trial is warranted.

10

**CONCLUSION**

The Court went to considerable lengths to ensure that defendant Franco received a fair trial. Significant resources were devoted to the case — including funding for numerous defense experts and consultants — and the defense was most vigorous. The jury was diligent and discerning, ultimately acquitting defendant Franco of three of the four counts he was charged with. There is no occasion to overturn the jury's carefully considered, indeed lenient, verdict nor to convene a new jury for a new trial.

**IT IS SO ORDERED.**

Dated: April 4, 2012.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE